MINNESOTA THRESHER MANUFACTURING COMPANY, Respondent, vs. WOLFRAM, Appellant.

*May 24 — June 11, 1897.*

*Agency: Transaction outside of contract: Sale: Rescission: Evidence: Court and jury.*

1. In an action on a promissory note given to the manufacturer of threshing machines by one of its agents, who had been employed under a contract making him personally liable for all machines sold unless settled for by cash or notes before delivery, in payment for a second-hand machine which he had sold on his own responsibility and which had been returned to him because failing to work as represented, the question whether the transaction amounted to a sale of the machine to the defendant entirely outside the contract of agency, thus enabling him to insist upon an express warranty, is *held*, upon the evidence, to have been for the jury.

2. Evidence in such case that, after some correspondence in respect to the return of the machine and rescission, the transaction was adjusted by the defendant with plaintiff's general agent, in pursuance of which the tools and extras which had been furnished with the machine were returned and credited to defendant, and plaintiff sent him an invoice of the outfit, by which it was consigned to him for sale on commission and charged to him at the regular agent's price,— rendered the question of rescission also for the jury.

APPEAL from a judgment of the circuit court for Outagamie county: CHAS. M. WEBB, Judge. *Reversed.*

This action was brought to recover upon a promissory note given by the defendant to the plaintiff, August 2, 1893, for $255. The defense was that the note was given as the purchase price of a separator, a machine for threshing grain, manufactured and furnished by the plaintiff to the defendant, under a representation that it was fit and proper to do the work for which it was designed, and that the defendant purchased it, relying on such representation; that the machine was not as represented, and not fit and proper to, and would not properly and well, do the work for which it was intended, and was not capable of threshing well everything a farmer has to thresh, as wheat, etc., and was altogether unsuitable and useless; that the defendant notified the plaintiff thereof, and requested it to take it away, or to put it in working order or condition, but that it neglected so to do, whereupon the defendant, by direction of the plaintiff, stored said machine at the place designated by it, where it has ever since remained, subject to the order and control of the plaintiff. Except as stated, the answer denied all allegations of the complaint.

At the trial before a jury, the defendant produced evidence that the note was given for the separator machine he bought of the plaintiff, relying upon a circular issued by the plaintiff, which the defendant had at the time, as to the capacity and character of the machine, which was put in evidence. The defendant gave evidence tending to show that the machine was thoroughly tried in August, 1893, and that it would not work properly; that they could not save nor clean grain with it, etc.; that it did not perform or work as represented; that the defendant, at the time of the purchase, was an agent, acting for the plaintiff, and had had the machine in his possession as such since the spring of 1893; that it was represented to him to be as good as a new one, and would do as good work as stated in the circular; that Blaker was the plaintiff's general agent, and one Dean, another agent of the

plaintiff, under Blaker, of whom he bought it, was assisting Blaker; that the defendant was buying the machine to sell.

It appeared that the plaintiff had first sold the machine to Bailey, who used it for ten or twelve days in the fall of 1892; that the number of the machine was 12,080, and the plaintiff had taken it back; that August 12, 1893, the defendant wrote to the plaintiff's agent Dean, of whom he purchased the machine, being the machine 12,080, that they could not make it work, "and so I am in a bad fix with it. I don't know what I shall do about it. . . . Let me know what I shall do about it. If parties are good, I could make them keep it all right, but I find I can't hold them. Give me your best advice." A letter was written from the · defendant to the plaintiff about the machine, the substance of which was that he could not make use of the machine, "because it did not work well, and it is here subject to your order. Please inform me what to do with it." The defendant afterwards wrote to the plaintiff, asking if it would be "all right if I load Bailey separator on car, and ship it to Stillwater," and offering to load it and the engine free of charge, and "send you all extras you sent to complete it." The plaintiff answered: "As regards the Bailey separator, which you purchased of our Mr. Blaker, we are not prepared to make you any reply. . . . These matters are in his hands, and if he expects you to stand by your bargain and pay for the machine, he is unquestionably justified in doing so. . . . We shall certainly not receive either the engine or separator should you ship them back without our consent." At the time the defendant purchased, the plaintiff furnished him "free repairs to complete the Bailey separator, two belts, three sieves, one tool box, and the tools that are usually furnished with a new separator."

The defendant testified that he had a settlement in his agency account with plaintiff in the fall of 1893, with Blaker, then the plaintiff's agent, and that the plaintiff took

back the said tools and extras, and in 1894 the plaintiff's agent McNair directed him to ship them to the plaintiff; that he received from the plaintiff, about its date, September 8, 1893, or shortly thereafter, a bill charging him with said engine and separator No. 12,080, at $350, as "consigned for sale on commission." He testified that $350 was the regular invoice price of these separators charged up to agents of the company, and was the retail selling price for which they were to sell them, and the agent had his commission, twenty per cent., with ten per cent. off for cash; that this bill was sent to him after the plaintiff knew of his refusal to take the machine, and after his letters to them, and he received it after he knew that they did not want to accept the separator; that the separator was in Farrell's field until late in the fall, and, acting as the plaintiff's agent, he got the machine under cover on his own premises, and that it was there yet, subject to the plaintiff's order; that at the time Blaker took back the tools, etc., he understood the situation of things; and defendant had talked it over with him; and that he received credit for the tools, etc.; and that he was credited with repairs he had made on the separator in the repair-settlement account produced in evidence.

The plaintiff put in evidence the defendant's agency contract with the plaintiff, providing, in substance, among other things, that the defendant, as plaintiff's agent, should not deliver any machine or other property to any customer or other person, or permit the use thereof, until settled for by cash or notes, and, if he should do so, he should become personally liable for it, and, on demand, should account to the plaintiff for the price thereof, with interest, etc., and should "waive all claims under the warranty, and protect the plaintiff from all such claims on any machines, or parts thereof, sold or delivered without settlement, as therein required." Also, a letter written by the defendant to the

plaintiff's agent Dean, in regard to the sale to him of the machine, in which he says: "I have to let you know that I have sold separator for $275, to be paid this fall, and I will give my note payable until December 1st. Party will get it to-morrow. You make out *how much you want from me*, and I will send you note for same. I have sold it at my own risk, and so you make out your statement, and send it to me. If I do not hear anything to the contrary till to-morrow, I will let it go out. If you can come down here at once, we can fix it up." Also, a letter from the defendant to the plaintiff, dated August 21, 1893, in which he writes: "I had bad luck with the Bailey separator. I sold it out so I thought it was all right, and gave my own note for it, but, as it came to the point, the party could not make it work; so they left it in the field, and bought another separator. So, I offer to bring the separator back, and load it on the cars here at Appleton, free of charge, if he would return my note of $255, and he say he would not do it, so he can go to trouble. [Defendant explained that he referred to the agent Blaker.] If you think you can make better by it, and so I think would be best, you would not be out anything, and it would help me out of soup."

The court directed a verdict for the plaintiff, for the amount of the note, upon which judgment was given against the defendant, and from which he appealed.

*Humphrey Pierce*, for the appellant.

For the respondent there was a brief by *Brown & Buffington*, and oral argument by *F. V. Brown*.

PINNEY, J. 1. The evidence strongly tends to show that the transaction in respect to the machine No. 12,080, between the plaintiff and defendant, was wholly outside of the agency contract between the parties, and was, in fact, a sale by the plaintiff of this machine to the defendant, so that he might insist upon the warranty which the evidence tends to

show was made at the time the machine was sold to him by plaintiff's agent Dean, and the consequences of the alleged breach thereof. Whether it was a transaction within or wholly outside of the agency contract should have been submitted to the jury under proper instructions from the court. The circuit court appears to have held that by the provisions of the agency contract, contained in the statement of the case, the defendant was barred, as a matter of law, from insisting upon the breach of warranty asserted in the answer. This view of the case is, we think, erroneous.

2. The defendant, in his answer, insisted upon the right to rescind the sale, for the reason that the machine did not answer the terms of the warranty, and that he had notified the plaintiff thereof since the discovery, and within a reasonable time, offering to return the machine. *Warder v. Fisher,* 48 Wis. 338; *Paige v. McMillan,* 41 Wis. 337. The defendant averred in his answer that, by direction of the plaintiff, he had stored the machine in a designated place, where it was, and ever since had been, subject to the plaintiff's control. There was evidence tending to support the defense that the contract of sale had been rescinded. It was to the effect that, after some correspondence in respect to the return of the machine and rescission, the transaction was adjusted by the defendant, with the plaintiff's general agent, so that the tools and extras were returned and credited by the plaintiff to the defendant to the amount of $19.47, and by the plaintiff sending the defendant, under date of September 8, 1893, an invoice of the engine and separator No. 12,080, by which it was consigned to the defendant for sale on commission, and charged to him at $350, the regular price at which such machines were charged up to agents for sale. According to the evidence, the plaintiff not only took and received back the tools and extras furnished with the machine upon its sale, but practically took back the machine, by making the defendant's actual possession of it the pos-

·session of the plaintiff, as its bailee, for its sale on commis-sion; so that the plaintiff received back all that it had parted with under the sale, and thus seems to have assented to the defendant's claim of rescission. The defendant, under the evidence, was entitled to have his claim of defense in this respect submitted to the jury. The circuit court erred in withdrawing it from the consideration of the jury, and in directing a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is re-versed, and the cause remanded for a new trial.