WARDER and another vs. FISHER.

*January 10 — February 3, 1880.*

*(1, 2)* SALE OF CHATTEL, *with warranty: Rights of the parties.*

*(3)* COURT AND JURY. *Impeachment of witness: Erroneous instruction as to impeaching evidence.*

1. On a sale of a chattel, with a warranty express or implied, in the absence of fraud on the vendor's part, if the article *is not as warranted*, the purchaser may return or offer to return it within a reasonable time (where the time is not fixed by special contract), and thus defeat the vendor's right to recover any part of the price, or may keep it, and, in an action for the price, recoup damages for breach of the warranty; but in such action the vendor may recover the real value of the chattel, if any, notwithstanding its total unfitness *for the uses* for which it was purchased.

2. In an action for the price of a reaper, where plaintiff's evidence tended to show a sale with special warranty, and defendant's evidence tended to show that there was *no sale*, it was error to instruct the jury that, "if there was a contract of sale, and the machine was *wholly unfit for the uses for which it was constructed* and purchased, there was an entire failure of consideration, and defendant was not required to return or offer to return the machine or to pay for it."

3. The credit of a witness may be impeached by showing that he has made statements out of court contrary to his testimony at the trial; and where the testimony was so conflicting as to make the credibility of the witnesses important, and such impeaching evidence as to respondent's witnesses had been introduced by the appellant, it was error to instruct the jury that such evidence "is generally worthless to destroy the evidence of witnesses to facts."

APPEAL from the Circuit Court for *Crawford* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought by the plaintiffs to recover the value of a reaper which they allege the defendant purchased of them, and for which he agreed to pay the sum of $145. The defendant by his answer denies that he ever purchased the reaper of the plaintiffs, and alleges that it was delivered to him by the plaintiffs on trial, with the agreement that if he was not satisfied with it they would take it away again; and

that after trial he notified the plaintiffs that he was not satisfied with it, and requested them to take it away. Upon the trial, the evidence was very conflicting, the plaintiffs' witnesses testifying that the defendant made an absolute purchase of the machine for the agreed price of $145, with a special warranty on the part of the plaintiffs that the machine should do good work; and that if, after notice to plaintiffs and an opportunity given to test the same by the plaintiffs or their agents, it did not then perform the work as warranted, the machine was to be returned to the plaintiffs, and the defendant released from all liability to pay for the same. The defendant and some of his witnesses testified that he did not purchase the machine, but took it on trial, to be returned if not satisfied with it; that he tried it, and it did not satisfy him; and that he notified the plaintiffs of the fact, and requested them to take it away. There was no evidence showing a breach of the special warranty in case the jury found from the evidence that the defendant purchased it with such warranty."

The instructions to the jury are sufficiently stated in the opinion, *infra*. There was a verdict for the defendant; a new trial was refused; and the plaintiffs appealed from a judgment on the verdict.

For the appellants, there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Thomas*.

*Wm. H. Evans*, for the respondent.

TAYLOR, J. The evidence being conflicting upon the principal issues in the case, it was important that the jury should be carefully instructed as to the rights of the parties under the two different theories of the case. The learned circuit judge very properly instructed the jury, that if they found in favor of the defendant's theory, that he took the machine upon trial, to be taken away by the plaintiffs if he was not satisfied with it, then there was no sale, and the plaintiffs

Warder and another vs. Fisher.

could not recover.   He'also very properly instructed the jury, that if they found in favor of the plaintiffs' theory, that there was a sale with a warranty, "the defendant could not rescind the contract unless the machine was defective; if it was not what it was represented to be, he might return or offer to return it, and relieve himself from obligation."   "If he purchased the machine by contract, and took it with a warranty, he was bound to comply with the terms of the warranty before he was entitled to rescind the contract."

The foregoing instructions were followed by the following: "If it was a contract of sale, and the machine was wholly unfit for the uses for which it was constructed and purchased, there was an •entire failure of consideration, and the defendant in that case would not be required to return or offer to return the machine, and is not bound to pay for it."  This instruction was excepted to by the plaintiffs, and it is insisted that it does not correctly state the law, and that it tended to mislead the jury to the prejudice of the plaintiffs.   We think the learned circuit judge was mistaken in his legal proposition, and that the exception of the plaintiffs was well taken. The court had already charged the jury correctly, that, "if the defendant purchased the machine, and took it with a warranty, he was bound to comply with the terms of the warranty before he was entitled to rescind the contract."   This instruction was applicable to the case made by the plaintiffs' evidence, that the sale was accompanied by a special warranty, which provided that such special warranty should be invalid and of no effect, "unless the machine is properly set up and operated as per our directions.   If said machine does not perform as above [referring to the warranty], immediate notice must be given to Warder, Mitchell & Co., Chicago, Ill., subject to a second trial in their presence, when, if the failure is found not to have arisen from any defect in the machine, it shall be kept by the·purchaser, and continued use shall be

considered proof that it fills the warranty; but if, upon said second trial, said machine does not work as above, it may be returned to us, and the money will be refunded."

The case was properly submitted upon the claim of the plaintiffs that the sale was made with this special warranty, by the instructions first given by the learned judge; but the instruction to which exception was taken, submitted the case to the jury upon a wholly different theory, to wit: that if the defendant had in fact purchased the machine, no matter upon what terms or conditions, yet, if the jury found from the evidence that it was wholly unfit for the uses for which it was constructed and purchased, then the plaintiff could not recover, even though the defendant had not returned or offered to return it. We think the jury must have so understood the instruction, as the evidence does not show any sale, except the sale with the special warranty. The plaintiffs' evidence tends to prove the sale with such warranty, and no other, and the defendant's evidence that there was no sale. The jury must therefore have understood, that if there had been a purchase by the defendant with a special warranty, yet, if the machine proved on trial to be wholly unfit for the uses for which it was purchased, the special warranty might be disregarded by the defendant, and still he could defeat the plaintiffs' action without returning or offering to return the machine.

It seems to us that the instruction was inconsistent with the one just before given, as above quoted, and did not state the law correctly in stating that "if the machine was wholly unfit for the uses for which it was purchased, there was an entire failure of consideration." The true rule is, that in the case of the sale of chattels with a warranty expressed or implied, in the absence of fraud on the part of the vendor, if the thing purchased does not answer the terms of the warranty, the purchaser may return or offer to return the property within a reasonable time, and thereby defeat the right on the part of the vendor to recover any part of the purchase

price agreed upon; or he may keep the property, and, when sued by the vendor for the price, may set up the breach of the warranty in recoupment of the plaintiff's damages; but in such action the vendor, notwithstanding the breach of warranty, may recover the value of the chattel — if it has any value,— notwithstanding its unfitness for the uses for which it was purchased.    2 Schouler's Personal Property, 610, 611; *Perley v. Balch*, 23 Pick., 284; Chitty on Contracts, 276; *Hunt v. Silk*, 5 East, 449; *Conner v. Henderson*, 15 Mass., 319; *Wynn v. Hiday*, 2 Blackf., 123; *Dill v. O'Ferrell*, 45 Ind., 268; *Poulton v. Lattimore*, 9 B. & C., 259; *Fairfield v. Madison Manuf'g Co.*, 38 Wis., 347; *Fisk v. Tank*, 12 Wis., 302; *Bonnell v. Jacobs*, 36 Wis., 59; *Merrill v. Nightingale*, 39 Wis., 247; *Morehouse v. Comstock*, 42 Wis., 626; *Getty v. Rountree*, 2 Pin., 379.

In order to rescind the contract so as to defeat the vendor's right of action, the purchaser must put the vendor, so far as he reasonably can, in the position he was in at the time of the sale; and that can be done only by returning or offering to return the property in a reasonable time.  (See cases above cited.)   If the vendor retains the property without any offer to return, he takes upon himself the burden of showing that the property purchased is entirely worthless, not only for the purposes for which it was purchased, but for every purpose. It may be true that, in an action by the vendor for the purchase price, the vendee might defeat his recovery by showing that he had sustained special damages by reason of the breach of warranty, which equalled or exceeded the value of the property purchased, notwithstanding the property was retained by him, and was of some value; but in such case he does not defeat the vendor's action by showing an entire failure of the consideration agreed to be paid for the article, but by showing that, notwithstanding the value of the property purchased and retained, he has sustained damage by reason of the breach of the warranty, to an amount exceeding such value.   Under the

instruction given by the learned circuit judge, the jury would have been justified in finding for the defendant, notwithstanding he retained possession of the machine, and notwithstanding they might have found that the machine was of considerable value for other purposes than as a reaper.

It does not follow, because a machine or other personal chattel is wholly useless for the purposes for which it was made, that it is wholly valueless; and the vendee who retains the chattel purchased, without offer to return the same, can only have a perfect and full defense to the vendor's action for the price, when he is able to show that the article so purchased does not answer the purpose for which it was purchased, and that it is entirely valueless. If the article is of any value, either to himself or to the vendor, he must return or offer to return it, in order to make a full defense to the action for the price. We think the plaintiffs' exception to the instruction was well taken, and that the court erred in giving it to the jury.

There is another instruction which was given to the jury, and excepted to by the plaintiffs, which, we think, tended to prejudice the plaintiffs, and should not have been given. It is as follows: " With regard to the credibility of witnesses, you are to judge. It has been attempted to show that witnesses have made statements out of court different from those in court. Such evidence is generally worthless to destroy the evidence of witnesses to facts."

The contradictory nature of the evidence of the witnesses for the respective parties in this case rendered the question of their credibility of grave importance in the determination of the issues. It was hardly possible for the jury to reconcile their conflicting statements, and find that the witnesses were all truthful; and they were necessarily compelled to determine the issues in favor of the party whose witnesses, in their opinion, were entitled to the most credit. The record shows that as to the defendant and some of his witnesses the plaint-

iffs proved that they had made statements in relation to the matters in issue, out of court and before the trial, different from those which they made under oath on the trial. That the credit of a witness may be impeached by showing that he has made statements out of court contrary to what he has testified to at the trial, has been admitted and acted upon by all courts from the earliest times, and it is unnecessary to cite authorities to sustain that practice. All text writers treat of it as one of the established methods of impeaching the credibility of the testimony of the witness. 1 Greenleaf's Evidence, § 462, and notes; *Ketchingman v. State,* 6 Wis., 426.

The unsworn statements of a mere witness in the case, given in evidence to impeach his credibility, are not received as evidence to prove either side of the issues in the case, but to cast doubt and suspicion upon the truthfulness of the contradictory statement made by the witness under oath; but when the witness who has made the contradictory statements out of court is also a party to the action, such unsworn statements are received, not only for the purpose of attacking the credibility of the sworn statements of the party, but for the purpose of establishing the truth of the unsworn contradictory statements themselves. In a case like the present, where it was impossible to reconcile the contradictory testimony of the opposing parties and their witnesses upon the theory that they were all testifying to the truth as they understood it, and where the jury must of necessity pass upon the credit of the opposing witnesses, it seems to us that the learned judge was not justified in instructing them, substantially, that proof of contradictory statements made out of court should have no weight with them in passing upon the credibility of their testimony. If the proof of such contradictory statements is to have no weight in determining the credit of a witness, the rule permitting their proof should be abolished, and thereby save the time which is unnecessarily wasted in proving them.

We think the rule is founded upon a just appreciation of

the infirmities of human nature, and that the man who deliberately makes a statement relative to his business matters, when not under oath, and when under oath contradicts such statement, necessarily shakes our full confidence in the truth of such latter statement, and, unless a satisfactory reason be given (if one can be given) why the first false statement was made, the credibility of the witness so attacked is, to some extent, impeached, and whether he shall be believed or not is for the jury. It is not the duty or right of the court to say to the jury that such attack upon his credibility "is generally worthless to destroy his evidence."

The learned circuit judge erred in giving the instructions above mentioned; and, as they tended to mislead the jury to the prejudice of the plaintiffs, the judgment must be reversed.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.