(54 N. W. Rep. 288.)

---

## THE MINNESOTA THRESHER MANUFACTURING CO. *vs.* ELIAS HANSON.

Opinion filed Nov. 23rd, 1892.

**Sale—Warranty Construction.**

Contract of warranty upon the sale of a steam threshing machine construed. This court will not limit such warranty to such defects only as are discovered when the machinery is first started, unless the wording clearly requires such restriction.

**Action for Price—Defense—Estoppel.**

Continued use of machinery purchased under a warranty, after knowledge of defects may destroy the buyer's right to rescind the contract, but will not destroy his right to plead a breach of warranty to defeat a recovery, in whole or in part, in an action brought by the seller to recover the purchase price.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by the Minnesota Threshing Manufacturing Company against Elias Hanson. Plaintiff had judgment, and defendant appeals.

Reversed.

*Bangs & Fisk*, for appellant.

*A. J. O'Keefe*, for respondent.

BARTHOLOMEW, J. This action was brought to forclose a mortgage given to secure the purchase price of a steam threshing outfit. The defense was breach of warranty, followed by a rescission of the contract and a return of the property. From a decree of foreclosure, with judgment for deficiency against him, defendant appeals. The findings of fact are not questioned, but the legal conclusions are challenged. The property purchased was second

hand machinery. The order for the same, given by appellant, was upon a written and printed form, and contained the warranty upon which the breach is assigned. The portions thereof material to this decision are as follows: "This engine and separator is the Fadden rig, and is warranted and represented to be in running order at time of delivery. * * * It is hereby understood that if any of the machinery ordered herein is second hand, and has been repaired and sold as such, it is warranted to be in good running order at the time of delivery to the buyer; and if, at the time of first starting, it is found by the buyer not to be as represented, immediate notice by telegraph or by mail shall be given to the seller at Stillwater, Minn., and the buyer shall wait until the seller gets a man there to right it, and shall give him necessary and friendly assistance, and then, at once, give the machinery a fair trial. The use of such machinery after said trial shall be conclusive evidence of satisfaction and fulfillment of the warranty." The findings show that the machinery was delivered in the latter part of August, 1890, and appellant commenced to use the same September 2nd, 1890, and continued to use it until October 7th, 1890, and that during said time the machinery did good work, but that at the time of the delivery the boiler was in an unsafe and dangerous condition, by reason of certain defects that were unknown to appellant, and also unknown to respondent and its agent, who believed it to be in good running order; that on October 7th, 1890, the state boiler inspector condemned said boiler as unsafe, and ordered appellant to stop using the same; that until said date appellant did not know that the boiler was in a dangerous condition; that the next day appellant, for the first time, gave respondent written notice, by letter directed to it at Stillwater, Minn., of the defects in the boiler, and notified respondent that he repudiated the contract, and requested the return of his notes. It does not appear from the findings that any attention was given to this letter, and on October 23rd, 1890, appellant returned the property to the City of Grand Forks, and offered to turn the same over to the general agent of respondent from whom he purchased

it, but the agent refused to receive it. On the same day appellant again notified respondent that he had returned the property, and left it near respondent's warehouse, subject to respondent's disposal. After said date neither party interfered with the property in any manner. Upon these facts the learned trial court found, as a conclusion of law, that appellent, by keeping and using said machine until October 7th, 1890, without notice to respondent of any defects, was precluded from setting up a breach of warranty as to the condition of the boiler at the time of the purchase. If this conclusion is correct, the judgement must be affirmed; otherwise, reversed.

No question is raised, it will be noticed, upon the right of the buyer to return the property unless such right had been waived. Appellant was precluded from the defense of breach of warranty solely by reason of his conduct in using the property for such length of time without notice of defects. Whether this conclusion was based upon the express terms of the warranty, or upon general principles of law pertaining to the subject, we are not definitely informed. The learned counsel for respondent, in his brief, puts his construction upon the warranty, and prints it as follows: "That if, at the time of first starting, it is found by the buyer, not to be as represented, immediate notice, by telegraph or mail, shall be given to the seller at Stillwater, Minn. * * * The use of the machinery after such trial shall be conclusive evidence of satisfaction and fulfillment of the warranty." Under that construction the law is undoubtedly with respondent, as we regard it well settled that where an express warranty is upon condition, or when some duty is devolved upon the purchaser by the terms of the warranty, such condition must be fulfilled, or such duty performed, before advantage can be taken of any breach of such warranty. *Nichols* v. *Knowles*, 31 Minn. 489; 18 N. W. Rep. 413; *King* v. *Towsley*, 64 Ia. 75; 19 N. W. Rep. 859; *Russell* v. *Murdock*, 79 Ia. 101; 44 N. W. Rep. 237; *Worden* v. *Harvester Co.*, 11 Neb. 116; 7 N. W. Rep. 756; *Threshing Machine Co.*, v. *Vennum*, (Dak.) 23 N. W. Rep. 563. But will the warranty bear that construction? We

think not. We have already quoted it, supplying the ellipsis found in respondent's quotation. We think the fair, reasonable construction of the langauge will lead to the conclusion that the use of the machinery which is declared to be conclusive against appellant upon the question of breach of warranty must occur after notice of defects; after a man has been sent to remedy such defects; after an effort has been made so to do, and the machinery then given a fair trial. It is the use of the machinery after said trial that becomes conclusive. This construction becomes irresistible by reference to other portions of the warranty, all of which is set forth in the findings. It is provided that, in case of purchase of machinery other than second hand machinery, the buyer shall have three days after it is first started to ascertain whether said machinery is or is not as warranted. If not, he shall at once give notice to the seller, and wait until a man gets there to right it, and, after the man is through, the buyer shall at once give the machinery a fair trial of two days, and the use of the machinery after the said two days shall be conclusive evidence that it is as warranted. Here is it expressly declared that the use of the machinery which shall be conclusive upon the question of warranty follows the second trial of the machinery,—the trial that comes after the efforts of the expert to correct the defects. Under the language used, it is not reasonable to conclude that it was the intention to establish a different rule upon sales of second hand machinery. In this case it does not appear, however, that any attention was ever given to the notice of defects sent on October 8th, 1890, or that any man was sent to remedy such defects, or that there ever was any subsequent trial of the machinery. Such being the case, that portion of the warranty which makes the use of the machinery after such subsequent trial conclusive against the buyer on the question of breach of warranty must be eliminated from further consideration.

But it is claimed that under the express terms of the warranty the buyer was bound, at his peril, to discover all the defects in the machinery "at the time of first starting," and that only the defects

thus discovered and reported were covered by the warranty. This construction would be very narrow, and we do not think the language requires it.   It would convert a provision intended for the buyer's protection into a trap for his undoing.   It would be difficult, often impossible, for the buyer, upon a trial of an hour's duration, or even in a half day, to inspect each portion of a steam engine, boiler and grain separator, sufficiently to discover whether or not it was perfect, and properly performed its functions. When next started, in different grain, and under less favorable circumstances, portions of the machinery might be found entirely inadequate. Yet, under the construction contended for, the buyer's mouth would be closed.   We do not think the buyer understood, or that the seller intended him to understand, that he was receiving only this restricted and unsatisfactory protection. Independent of any conditions in the warranty, it was incumbent upon appellant to be ordinary dilligent to discover, and prompt to report, any defects in the machinery that would constituted a breach of the seller's warranty; and any continued use of the machinery, after knowledge of the defects, without notice thereof to the seller, would prevent a recission of the contract, and a return of the property. It would be an election upon the part of the buyer to affirm the contract.   *Locke* v. *Williamson,* 40 Wis. 377; *Boothby* v. *Scales,* 27 Wis. 626; *Sparling* v. *Marks,* 86 Ill. 125; *Marshall* v. *Perry,* 67 Me. 78; *Cookingham* v. *Dusa,* 41 Kan. 229; 21 Pac. Rep. 95; *Polhemus* v. *Heiman,* 45 Cal. 573.   But the retention and use of the property, without notice of defects, under the great preponderance of the later—and, as we think, better—authorities, affects only the right to rescind.  The buyer may still rely upon the breach of warranty to defeat a recovery, in whole or in part, in an action brought by the seller to recover the purchase price.   Continued use of the property, with knowledge of defects, and without notice or complaint of the seller, may be more or less persuasive as evidence of waiver of defects, but cannot establish such waiver as a matter of law.   See, generally, *Kellogg* v. *Denslow,* 14 Conn. 411; *Aultman, Miller & Co.* v. *Thierer,* 34 Ia. 272; *Muller* v. *Eno,* 14 N. Y. 597;

*Kent* v. *Friedman*, 101 N. Y. 616; 3 N. E. Rep. 905; *Vincent* v. *Leland*, 100 Mass. 432; *Taylor* v. *Cole*, 111 Mass. 363; *Warder* v. *Fisher*, 48 Wis. 338; 4 N. W. Rep. 470; *Ferguson* v. *Hosier*, 58 Ind. 438; *Fennock* v. *Stygles*, 54 Vt. 229; *Smith* v. *Mayer*, 3 Col. 207. We are unable, under the findings of fact, to discover any legal reason, either in the express words of the warranty or otherwise, why appellant may not in this case take advantage of the breach of the warranty, if any such breach in fact exists.

An inspection of the record in this case discloses another reason why we should reach this conclusion. The original contract is partly printed and party written. The first warranty of the particular property involved, and which we have already quoted, is in writing, and is unconditional and absolute. The conditional warranty is printed. To give that conditional warranty the construction for which respondent contends would make it entirely inconsistent with the written warranty. A well settled rule of construction, in all such cases, makes the written portion of the contract controlling, as being that to which the attention of the parties was more directly and specifically called.

The judgment of the District Court is reversed, and a new trial granted. All concur.