ERICKSON, Respondent, vs. WESTFIELD MILLING & ELEC-
TRIC LIGHT COMPANY, Appellant.

*March 5—May 5, 1953.*

For the appellant there were briefs by *John A. Conant* of Westfield, and *Brazeau & Brazeau* of Wisconsin Rapids, attorneys, and *Richard S. Brazeau* of Wisconsin Rapids of counsel, and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

BROWN, J. Plaintiff operates an electric-utility plant at Warroad, Minnesota, and defendant operates one at Westfield, Wisconsin. They agreed to exchange certain generating machinery and defendant agreed to pay to plaintiff $5,000 in addition. Their first agreement was in writing dated June 5, 1950, and described plaintiff's machine as "a complete generating unit." For this defendant "is to pay $5,000 and 1 Cummins L6 720 R. P. M. generating unit, 2400 volt,

said unit to be delivered at Warroad complete and in good operating condition." There is testimony that after the contract was signed defendant told plaintiff it was not satisfied with the requirement that defendant's unit was to be delivered in operating condition while plaintiff was only bound to furnish a "complete" unit. At any rate, when the parties met to exchange properties about June 6, 1950, they executed a second contract which provided that each party was to deliver to the other "a complete generating unit" and omitted all reference to "good operating condition." When the new contract was executed defendant turned over its generator to plaintiff and paid him the specified $5,000 and received and took home the generator which had formerly belonged to plaintiff. Within a few days plaintiff discovered that the crankshaft on the unit which he had just received was broken, a filter was missing, and gaskets and bearings were worn out. He had them replaced at a cost of $2,852.44 for parts and $450 for labor, total $3,302.44. On February 6, 1952, he brought this action for the breach of the contract of June 5th, alleging that the unit received from defendant "was not complete and it was not in good operating condition" and demanded $3,500 damages for the cost of repairs and replacements "so as to make it complete and to put it in good operating condition." Plaintiff's testimony on the trial conformed to the complaint, in that the expense was incurred to put the machine in good operating condition.

Defendant answered alleging that the contract upon which plaintiff sued was superseded by the second one, attaching a copy of it, and denying the allegations of broken crankshaft and missing parts. Defendant also denied that plaintiff had sustained any damage for the reason that the machine delivered by plaintiff to defendant "was not in working condition and is absolutely worthless." Plaintiff filed a "reply" to this answer, alleging that he had been induced to sign the second contract by fraud and repeating his reliance upon the first

contract. This "reply" was verified March 22, 1952, and with the issues so drawn the parties approached the day of the trial. Then, on April 2, 1952, the plaintiff served defendant with an amended complaint in which he alleged the execution of the second contract only and complained that the unit delivered by defendant to him was not a complete generating unit because of the missing and damaged parts already described.

When the case was called for trial on April 9, 1952, plaintiff moved the court to allow the amendment to the complaint just mentioned. In a conference between counsel and the court plaintiff stated that by this amendment all allegations of fraud were withdrawn and he was now standing upon the second contract as the one governing the transaction. Defendant objected to proceeding to trial without having twenty days in which to answer this amended complaint, but the trial court stated that there had been no change in the issue except that plaintiff's amendment had adopted the contention of defendant's answer that the second contract was the controlling one. The court allowed the amendment and directed that the trial should begin that afternoon. After the noon recess defendant returned to court with an amendment of its own, substituting for its original answer a new one directed to plaintiff's amended complaint and containing a counterclaim. In these defendant seized the issue of fraud which plaintiff had just laid down and alleged that by reason of plaintiff's fraudulent misrepresentation of the condition of plaintiff's generator defendant had been swindled out of its own generating unit and $5,000. Plaintiff objected to the injection of these new issues at this late date and was sustained by the court which stated that defendant had waived its right to interpose a counterclaim because it had not asserted the counterclaim at the first opportunity. The court then denied defendant's motion to admit the amended answer and counterclaim.

We consider the trial court abused its discretion in this respect. We find no requirement by statute or otherwise that counterclaims be asserted at the first opportunity nor that failure to do so waives them. As the price of allowing belated pleadings, the trial court may impose terms commensurate with the excuse which the moving party has for its delay and with the inconvenience and expense caused to parties and the court by the amendment, but to deny an amendment by which a party, as here, seeks to submit its grievances arising from the transaction to the same jury which considers the grievances of its opponent goes farther than we can justify. Moreover, it was plaintiff who had just submitted a new complaint and thereby had set in motion the present procedural controversy. It seems to us that defendant, upon receipt of a new complaint, was entitled to reconsider its position in the light of the facts newly alleged by plaintiff, and if a new defense appeared to defendant to be desirable, the new complaint gave it an absolute right to make one. If its answer contained new matter which the plaintiff was not prepared to meet, it was for plaintiff to move for continuance. We believe when the trial court accepted plaintiff's new pleading it was required to afford an equal opportunity for defendant to amend, upon just terms.

Having admitted plaintiff's amended complaint and denied defendant's answer and counterclaim, the trial court apparently recognized that defendant's protests had merit and upon reconsideration it rescinded its order of the morning admitting the new complaint and announced that all amendments were denied and ordered that the trial would proceed on the original complaint and answer. Whether this was intended to restore plaintiff's right to rely on the alleged fraud of defendant in procuring the second contract, as specified in the "reply" but abandoned by plaintiff when his amended complaint was offered, is uncertain. On this appeal plaintiff urges only defendant's failure to deliver a "complete unit," as in

the second contract, not one "in good operating condition," and we consider it was the understanding of the parties that there was no issue of fraud on either side. That being so, when, over objection, the court permitted plaintiff to testify that defendant's agent induced him to sign the second contract by representing that it was an exact copy in typewriting of the first, longhand, contract, we consider immaterial and irrelevant evidence extremely prejudicial to defendant, was admitted. The court denied defendant's motion to strike it, saying that fraud was not the only inference which could be drawn from such testimony. We are unable to think of any other inference and conclude that reversible error was committed by the refusal to strike and to instruct the jury to disregard the testimony.

While at all times in opposing plaintiff's claim defendant stood upon a strict interpretation of the second contract and objected to evidence that the generator it delivered to plaintiff was not in operating condition, defendant complains that the trial court excluded defendant's similar evidence that it was unable to operate the unit received from plaintiff and that it was worthless. We consider the exclusion was proper for two reasons: First, plaintiff had not promised his machine should be in good operating order. It was this omission which led defendant to insist that such a representation concerning its own machine should be eliminated. Second, while the answer alleged that the generator delivered by plaintiff was worthless this was not pleaded as a setoff or counterclaim. The allegation in the answer is not tied into anything but appears as a fugitive statement, not within the issue of whether defendant furnished plaintiff with a complete generating unit. As such, the allegation of worthlessness in the answer did not entitle defendant to introduce evidence of such fact. Defendant cites cases where evidence of the worthlessness of the articles was admitted though there was no counterclaim or setoff pleaded. *Warder v. Fisher* (1880),

48 Wis. 338, 4 N. W. 470; *J. I. Case Plow Works v. Niles & Scott Co.* (1900), 107 Wis. 9, 82 N. W. 568; *J. Thompson Mfg. Co. v. Gunderson* (1900), 106 Wis. 449, 82 N. W. 299. In these actions the defendant was resisting payment for plaintiff's goods, alleging them to be worthless, while now we are concerned with plaintiff's suit for damages for defendant's failure to perform its contract. Had our plaintiff sued for the purchase price of the generator, which he had delivered and which defendant had not paid for, the worthlessness of such machine would be material. We do not consider it is so when the suit is for damages arising out of defects in the machine which defendant had delivered to plaintiff, in the absence of a setoff or counterclaim in the pleadings.

Defendant submits that the evidence does not support the verdict in respect to damages and, further, that the trial court erred in increasing the amount allowed by the jury. The questions may be considered together.

Plaintiff's complaint alleged that parts of the generator were missing, other parts were broken, and "it was not in good operating condition" whereby he had to incur expense for repairs and replacements "so as to make it complete and to put it in good operating condition." His witnesses testified that parts costing $2,852.44 were supplied to put the generator in operating condition and that labor of the value of $450 was necessary to install the parts and put it in operating condition. The jury found damages in the sum of $2,323.30. The trial court correctly concluded that there was no evidence in the case upon which the jury could have based this sum and it raised the award to $3,302.44. We may surmise that the jury realized that the contract did not call for good operating condition whereas the expense was incurred to effect that result and, accordingly, the jury took something off the total bill; or the jury, knowing this was a used machine made some allowance on the cost of new

parts to cover depreciation. However equitable this may have been, the evidence supplied no figures justifying any particular reduction. The reduction from total expense appears to be made on speculation and cannot be upheld; but the court's alteration is equally vulnerable for it allows expense which was incurred in an unnamed amount to put the generator into good operating condition, although this was not the contract obligation. There is no evidence from which can be determined the cost of making the unit a complete, though secondhand, machine.

Defendant also relies on sec. 121.49, Stats., which recites:

". . . But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

In *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392, we held that the notice referred to must inform the seller that the buyer looks to him for damages. In *Ace Engineering Co. v. West Bend Malting Co.* (1943), 244 Wis. 91, 11 N. W. (2d) 627, we held that such notice is a condition precedent to the recovery of damages. Defendant submits that the plaintiff did not give it such notice. Plaintiff replies that this point was raised for the first time upon the appeal. We do not think this helps him. In *Simons v. Brockman* (1946), 249 Wis. 50, 23 N. W. (2d) 464, 24 N. W. (2d) 409, the appeal came before us upon findings that (1) equipment was sold with a warranty, (2) the warranty was breached, and (3) defendant could recoup the damages caused by the breach. We reversed, denying defendant such damages "because there is no finding that the defendant served on the plaintiff the notice required by sec. 121.49, Stats., that he claimed damages for the breach, nor is there any evidence of the giving of such notice," page 53, and we then quoted with approval

the *Marsh Wood Products Co. Case, supra.* Plaintiff attempts to distinguish the present case from those within the intent of the statute by insisting that this is not a suit upon a breach of warranty or a promise but "is a suit to recover damages because the defendant did not deliver the subject matter described." Unless the defendant had promised to deliver such subject matter plaintiff has no cause of action for its failure to do so. We think it is quite apparent that the action rests on the breach of that promise and that under sec. 121.49, Stats., it cannot be maintained unless the prescribed notice has been given. As in *Simonz v. Brockman, supra,* there is no finding by court or jury that the notice was given and this record contains no evidence upon which such a finding could be made.

Plaintiff contends that defendant waived the notice because it did not demur or answer in respect to the omission of plaintiff to plead that notice had been given by him to defendant and proceeded to try the case without reference to it until it took its appeal. We have examined the briefs and appendix in the *Simonz Case, supra,* as well as the opinion appearing at 249 Wis. 50, 23 N. W. (2d) 464, 24 N. W. (2d) 409, and we find that there was no mention of the required notice one way or another in any pleading nor does such mention appear in the abridgment of testimony in the appendix. As the opinion itself points out, the trial court made no finding respecting it. As far as we can discover, the question concerning it was raised for the first time by the brief of appellant in this court. In this respect *Simonz v. Brockman, supra,* is on all fours with the action now before us and we held there, page 54, that the rule of the statute and of *Marsh Wood Products Co. v. Babcock & Wilcox, supra,* must be given effect. We must give it effect now and hold that if plaintiff did not give the defendant notice required by sec. 121.49, Stats., he cannot hold defendant liable for the

breach of defendant's promise or warranty that the machinery delivered should be a complete generating unit.

It would not be difficult to say now that plaintiff's failure to serve notice warrants dismissal of his action, but plaintiff says that notice would have been proved if the point had been deemed material. The record of the whole case shows such an abundance of misunderstanding, cross-purposes, and frustration that dismissal would leave us with a strong belief that the issues had not been fully tried nor justice done. In particular, we consider that if defendant has a valid counterclaim, it should be litigated if possible in the same action as the claim of plaintiff, so that one jury may pass on every dispute rising out of the exchange of properties. Defendant was denied this opportunity, erroneously, as we believe. We conclude that this is an action where in the interest of justice we should exercise our powers under sec. 251.09, Stats., and remand the cause for a new trial. We suggest that a timely amendment of pleadings will enable the parties and the trial court to recognize and deal with the questions in dispute more satisfactorily than appears to have been possible upon the pleadings which governed the first trial.

*By the Court.*—Judgment reversed and cause remanded with directions to grant a new trial.