KIETLINSKI and another, Plaintiffs, vs. INTERSTATE TRANS-
PORT LINES, INC., and another, Respondents: PEERLESS
CASUALTY COMPANY, Appellant.

SAME, Plaintiffs, vs. FIREMAN'S FUND INDEMNITY COM-
PANY and another, Respondents: PEERLESS CASUALTY
COMPANY and another, Appellants.

*January 7—March 7, 1958.*

454

For the appellants there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, and oral argument by *Gerald P. Hayes, Sr.*

For the respondents Interstate Transport Lines, Inc., and Harvey R. Cheesebrough, Jr., there was a brief and oral argument by *Charles C. Luetke* of Minneapolis, Minnesota.

For the respondents Briggs Transfer Company and Fireman's Fund Indemnity Company there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

WINGERT, J. We agree with the trial court that the asserted policy defenses must fail, and that the insurance provided by Iowa and Peerless was in force with respect to the accident in suit.

1. *Ownership of described vehicles.* The vehicles, two Autocar tractors and two semitrailers, were described in the insurance policy issued by Iowa as being in the sole ownership of Interstate. Thus declaration 6 stated that "The named insured is the sole owner of the automobile except as herein stated," no exception being specified, and insuring agreement VIII provided that "This policy applies only to accidents which occur . . . while the automobile . . . is owned, maintained, and used for the purposes stated as applicable thereto in the declarations." Condition 22 of the policy provides that by accepting the policy, the insured agrees that the statements in the declaration are representations, and that "this policy is issued in reliance on the truth of such representations."

Iowa argues that the vehicles were owned by Cheesebrough, Sr., individually, and not by Interstate, and that therefore the representation that the named insured, Interstate, was the sole owner of the vehicles was false, and that such misrepresentation avoided the policy. In support of its contention, Iowa refers to repeated instances in the record in which Cheesebrough, Sr., testified that he was the owner of the vehicles in question.

The trial court made no specific finding of fact on the subject of ownership, but stated in its opinion that the title of Cheesebrough, Sr., was "at most an equitable one." Since the matter is not covered in the formal findings, this statement in the opinion has the weight of a finding of fact.

We need consider the question of ownership only with respect to the Autocar tractors, for the insurance policy carried the following indorsement relative to trailers:

"It is agreed and understood that for the additional premium charged that the above policy will afford the insured coverage under coverages A and B for trailers while in his care, custody, and control for purposes of being operated with either of the tractors insured under this policy and designated as Items 1 and 2 on the schedule."

While Cheesebrough, Sr., testified that he was the owner of the vehicles, he also testified that "I wouldn't say I was actually the owner of those vehicles covered in this policy, because they were transferred to Interstate;" that he told Iowa's agent through whom the insurance was written that Interstate owned the vehicles; that he was almost positive that he had transferred them to Interstate and that Interstate had title to them; that the titles were in Interstate's name; that the tractors were Interstate's tractors; that he put the title in Interstate for convenience only, since in order to get insurance on the vehicles it was necessary to show that Interstate was the owner; and that the vehicles were leased to Interstate on a yearly basis. This testimony abundantly sustains the trial court's determination that any title of Cheesebrough, Sr., was at most an equitable one. On Cheesebrough's own testimony, he would be estopped to assert ownership in himself in any way detrimental to Iowa.

The evidence clearly shows that title to the tractors had been transferred to Interstate and was registered with the state of Minnesota in the name of Interstate. This fact creates a presumption that Interstate was the owner. *Kruse v. Weigand*, 204 Wis. 195, 203, 235 N. W. 426. Iowa has not rebutted that presumption.

It may be conceded that Cheesebrough, Sr., probably retained a substantial interest in the tractors. We do not

consider that "sole ownership" within the meaning of the insurance policy necessarily excludes any and all interest on the part of someone else. In common usage, "owner" is often equated to title-ownership. Thus sec. 85.10 (16), Stats. 1955, provides that the term "owner" as used in the motor vehicle code of this state means—

"A person who holds the legal title of a vehicle; or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the condition stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner."

We are not prepared to give a more-restricted interpretation to the term "owner" as used in Iowa's policy, which was drawn by the company and in case of doubt is to be construed against it. Without further discussion we hold that Iowa has failed to establish that the tractors in question were not "owned" by Interstate within the meaning of the policy.

The policy defense must fail for another reason. Sec. 209.06 (1), Stats. 1949, provides:

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

We need not consider whether this statute is directly applicable, the insurance contract having been made in Minnesota or Iowa in contemplation of operation in Wisconsin by the insured and the claim arising out of an accident in Wisconsin. We have not been referred to any contrary law in Minnesota or Iowa, and may therefore assume that the law

of those states on the subject is similar to ours. *Elmergreen v. Weimer,* 138 Wis. 112, 117, 119 N. W. 836.

Here there was no evidence that the representation that Interstate "owned" the vehicles was made with intent to deceive, for there is no showing that Cheesebrough, Sr., understood that ownership represented any greater interest than that which Interstate had according to the evidence above mentioned. Neither is there any showing that the existence of the interest in the vehicles claimed by Cheesebrough, Sr., increased the risk or contributed to the loss.

*2. Substitution of tractor.*   At the time of the trip which resulted in the accident, one of the Autocar tractors described in the insurance policy was disabled and in the shop for repairs, and Cheesebrough, Sr., substituted for it a Federal tractor owned by him and not described in the insurance policy.

Coverage A of the policy insured Interstate with respect to personal-injury liability arising out of the use of "the automobile." A subsequent provision of the policy defined "automobile" to mean the motor vehicle described in the policy, and to include—

". . . an automobile not owned by the named insured while temporarily used as a substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction; . . ."

The trial court found, on sufficient evidence, that the Federal tractor was substituted for one of the Autocars described in the policy "as permitted under the policy." The Federal tractor was therefore covered by the Iowa policy to the same extent as the described Autocar would have been covered had it been used on the trip, notwithstanding that the Federal vehicle was not owned by Interstate. Hence the policy defense based on the substitution of vehicles must fail.

3. *Lease to Briggs Transfer Company.* When the accident occurred the tractor and semitrailer driven by Cheesebrough, Jr., were under lease to Briggs Transfer and were en route from Chicago to Minneapolis on a route which Interstate was authorized to use, but with a load of goods which Briggs had undertaken to transport and was authorized to transport by its certificate of convenience and necessity, and of a nature which Interstate was not so authorized to carry. Iowa contends that its policy did not then cover the vehicles, since Iowa agreed only to insure Interstate, not Briggs Transfer, and the return trip from Chicago during which the accident occurred was exclusively an affair of Briggs Transfer, with which Interstate had nothing to do.

Reference is made to the policy provision that "This policy applies only to accidents which occur ... while the automobile ... is owned, maintained, and used for the purposes stated as applicable thereto in the declarations." The declarations state that the automobile is to be used for commercial purposes, and defines "commercial" as "use principally in the business occupation [trucking] of the named insured [Interstate] as stated in Item 1, including occasional use for personal, pleasure, family, and other business purposes."

The trial court found as facts that the accident occurred while the vehicle was being operated "on a trip for the advantage and convenience of both Briggs Transfer Company and Interstate Transport Lines, Inc.," and further, that—

"Harvey R. Cheesebrough, Jr., was responsible to Interstate Transport Lines, Inc., for Interstate Transport Lines, Inc.'s equipment and had the management and control of the vehicle on the highway, and at the time of the accident was the employee of Interstate Transport Lines, Inc., and as between Briggs Transfer Company and Interstate Transport Lines, Inc., Interstate Transport Lines, Inc., was an independent contractor."

Evidence and admissions in the record support the finding that Cheesebrough, Jr., was an employee of Interstate. The

trip-lease to Briggs Transfer was arranged and signed by Cheesebrough, Jr., on instructions of Cheesebrough, Sr., Interstate's general manager, to avoid the necessity of returning from Chicago to Minneapolis without a pay load. We do not think it necessary to determine whether the proceeds of the trip-lease went or were intended to go to Interstate or to Cheesebrough, Sr. In either case, Interstate had an interest in the return of its vehicles and its driver to its home port at Minneapolis, so that they would be available for future trips out of that place. We consider, therefore, that the vehicles were operating partially in Interstate's business on the return trip, and hence were covered by Iowa's insurance policy, notwithstanding that they were carrying a load for Briggs Transfer which Interstate had no authority to carry in interstate commerce.

We are not deterred from reaching this conclusion by the fact that double insurance coverage may result, with both Interstate's insurer, Iowa, and Briggs Transfer's insurer, Fireman's Fund, being potentially liable for the damages resulting from the accident. Presumably both insurance companies received premiums for the risks undertaken by them, and they cannot be heard now to complain that by virtue of the peculiar circumstances the insured vehicles were being used in the business and for the benefit of both of their insureds.

4. *Liability of Peerless.* Since Iowa was not licensed to do business in Wisconsin, it arranged with Peerless to make certain filings known as BMC 31 and BMC 33, required by the interstate commerce commission to assure certain minimum liability insurance coverage for the benefit of the public.

BMC 33 certifies that Peerless has issued to Interstate a policy of liability insurance which, by the attachment of indorsement BMC 31, has been amended to provide coverage for the protection of the public with respect to operation of the vehicles under certificate of convenience and necessity

issued to the insured by the commission "regardless of whether such motor vehicles are specifically described in the policy or not." It provides further that "the liability of the company [Peerless] extends to all losses, damages, injuries, or deaths, whether occurring on the route or in the territory authorized to be served by the insured or elsewhere."

The indorsement BMC 31 provides in part that the company (Peerless) agrees to pay, up to $5,000–$10,000 limits, any final judgment against the insured for bodily injury resulting from the negligent operation of motor vehicles "under certificate of public convenience and necessity or permit issued to the insured by the interstate commerce commission, . . . regardless of whether such motor vehicles are specifically described in the policy or not." It further provides that—

"Nothing contained in the policy or any other indorsement thereon, nor the violation of any of the provisions of the policy or of any indorsement thereon by the insured, shall relieve the company from liability hereunder or from the payment of any such final judgment."

According to what is said to be a common practice, no policy was actually issued by Peerless to Interstate as certified in BMC 33; but Peerless does not seek to escape liability on that ground.

In our opinion the above-quoted provisions of BMC 33 and BMC 31 render unavailable to Peerless the policy defenses relied upon by Iowa, even if such defenses were available to Iowa. It is contended on behalf of Peerless, however, that the BMCs 33 and 31 specified coverage only with respect to operation by Interstate under its certificate of public convenience and necessity, and that Interstate was not operating under such certificate on the return trip from Chicago when the accident occurred.

We are unwilling to give the BMCs such a restricted construction. We think that if Cheesebrough, Jr., had returned to Minneapolis without any load, the return trip would have been "under" Interstate's certificate of public convenience and necessity, because a return trip to headquarters is an essential portion of the continued course of operation which the certificate contemplates. We do not see that it makes any difference that a load was being hauled for Briggs which Interstate's certificate did not authorize Interstate to haul. It was nevertheless essential for Interstate's operations under its certificate to get the vehicles back to their headquarters and for that purpose the operation was under Interstate's certificate, although the pay load was transported under Briggs Transfer's certificate. Trip leases to avoid returning empty are common in the industry, and Peerless knew it. The following decisions of this and other courts tend to support our conclusion: *Rusch v. Mielke,* 234 Wis. 380, 384, 291 N. W. 300; *Mitchell v. Great Eastern Stages,* 140 Ohio St. 137, 42 N. E. (2d) 771; *Trinity Universal Ins. Co. v. Cunningham* (8th Cir.), 107 Fed. (2d) 857; *Hodges v. Johnson* (D. C. Va.), 52 Fed. Supp. 488.

5. *Apportionment of liability.* In addition to overruling the policy defenses interposed by Iowa and Peerless and adjudicating that those insurance companies were on the risk at the time of the accident, the judgment appealed from further adjudges that if it be found on the trial of the negligence issue that Cheesebrough, Jr., was causally negligent, liability for reimbursement to Fireman's Fund for the $19,000 it paid in settlement of plaintiffs' claims shall be apportioned $5,000 to Peerless and $9,000 to Iowa, in each case with interest from September 3, 1953. Appellants assert error in this provision of the judgment, saying it is impossible to know what is meant by it or how the figures were arrived at.

We do not pass upon the merits of the apportionment, because it is still uncertain whether there is any liability to be apportioned. We think the allocation of the burden between the insurers should be deferred until trial on the negligence issues has established that liability exists. The judgment will therefore be modified by eliminating the paragraph in question.

*By the Court.*—The judgment is modified to eliminate the provision apportioning potential liability between the insurance companies and, as so modified, is affirmed.