HELLENBRAND and another, Plaintiffs and Respondents, v. BOWAR, Defendant and Appellant: I. D. O. FEED & SUPPLY CORPORATION, Impleaded Defendant and Appellant: McKESSON & ROBBINS, INC., Impleaded Defendant and Appellant.*

*March 6—April 3, 1962.*

* Motion for rehearing denied, with $25 costs, on June 5, 1962.

266

For the appellant Bowar there were briefs by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *James C. Herrick,* all of Madison.

For the appellant I. D. O. Feed & Supply Corporation, there was a brief by *Callahan & Arnold,* attorneys, and *Elton J. Morrison* of counsel, all of Columbus, and oral argument by *Carroll B. Callahan.*

For the appellant McKesson & Robbins, Inc., there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman* of Madison, and oral argument by *Mr. Jackman.*

For the respondents there was a brief by *Charles F. Gilkeson* and *Richard R. Rynders,* both of Madison, and oral argument by *Mr. Rynders.*

HALLOWS, J. The appellants raise three questions: (1) Was the notice requirement of sec. 121.49, Stats., satisfied, (2) does the evidence sustain the verdict that there was an express warranty by each of the defendants, and (3) is the verdict sustained on the basis of an implied warranty of fitness?

On the motions after verdict for the first time, the question was raised by the defendants that the plaintiffs had not pleaded or proven notice of breach of warranty. This assignment of error goes to the basis of the judgment against

Bowar which, in turn, is necessary to sustain the judgments against the other defendants. The giving of the notice required by sec. 121.49, Stats.[1] is a condition precedent to liability and the failure to do so is fatal to recovery. *Schroeder v. Drees* (1957), 1 Wis. (2d) 106, 83 N. W. (2d) 707; *Erickson v. Westfield Milling & Electric Light Co.* (1953), 263 Wis. 580, 58 N. W. (2d) 437; *Ace Engineering Co. v. West Bend Malting Co.* (1943), 244 Wis. 91, 11 N. W. (2d) 627; *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392. The notice must advise the seller the buyer is looking to him for damages. *Schaefer v. Weber* (1953), 265 Wis. 160, 60 N. W. (2d) 696; *Marsh Wood Products Co. v. Babcock & Wilcox Co., supra.* But the notice is sufficient if it fairly apprises the seller the buyer looks to him for damages, and if the requirements are met, the notice need not be in any particular form. *Ace Engineering Co. v. West Bend Malting Co., supra.*

Although the notice requirement is a condition precedent to liability and part of the cause of action, it is too late for the defendants now to raise the question as a matter of pleading. Failure to plead the notice would be fatal upon demurrer but the parties have gone to trial and to verdict. Under sec. 263.12, Stats., the defendant waived the objection to the complaint when it was not raised by demurrer or answer, and if this were not so, we would consider at this stage of the proceeding paragraph 10 of the complaint which alleges the plaintiffs made a "demand on the defendant for

[1] "121.49 ACCEPTANCE DOES NOT BAR ACTION FOR DAMAGES. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

damages caused as aforesaid" as being sufficient under our liberal rules of pleading.

However, the waiver of the pleading does not preclude a challenge to the sufficiency of the evidence to establish a cause of action. The trial court in its memorandum decision stated it had no hesitation in determining that a full and adequate notice as required by the statute was given to the defendant Bowar. This is equivalent of a finding of fact. *Morn v. Schalk* (1961), 14 Wis. (2d) 307, 111 N. W. (2d) 80; *Kietlinski v. Interstate Transport Lines* (1958), 3 Wis. (2d) 451, 88 N. W. (2d) 739.

Appellants claim as error the reliance of the trial court on the pleadings between the defendants in support of its finding. Bowar's cross complaint against I. D. O. alleged the plaintiffs advised Bowar on or about February 25th the sows and piglets were not responding according to warranties made by I. D. O. and, after an agent of I. D. O. checked the sows, the decision was made to abandon the use of the special feed and at that time the plaintiffs advised both Bowar and I. D. O. they would have a loss in connection with the use of the special feed. This allegation was not denied by I. D. O. in its answer. The cross complaint of I. D. O. against McKesson & Robbins alleged in paragraph 7 that in March, 1960, the plaintiffs made a demand for damages upon Bowar who, in turn, notified I. D. O. and, in turn, I. D. O. notified McKesson & Robbins. The trial court, relying on sec. 263.26, Stats., took the position the fact of notice of breach of the warranty was thus established by the record, but it is contended such pleadings were not in evidence and could not be considered to fill a gap in the plaintiffs' proof.

It is true in *Simonz v. Brockman* (1946), 249 Wis. 50, 23 N. W. (2d) 464, 24 N. W. (2d) 409, and *Erickson v. Westfield Milling & Electric Light Co.* (1953), 263 Wis. 580, 58 N. W. (2d) 437, the court held the failure to give notice required under sec. 121.49, Stats., could be raised for

the first time on appeal and granted a new trial with leave to plead and prove the giving of notice. In those cases there ,was no proof in the record. In this record, it is clear Bowar at all times knew the special feed was not fulfilling the warranty. He had been out to plaintiffs' farm several times. He consulted with I. D. O. about the matter and advised the plaintiffs to continue with the feed. Both Bowar and I. D. O. had full and ample opportunity and did participate in attempting to determine the cause of the damage. The purpose of a notice of the breach of warranty, which is to permit the seller to investigate the claim and to protect himself, was adequately fulfilled. These facts also alleged in the complaint must be considered with the allegation the plaintiffs made a demand upon the defendant for damages, but payment was not made. This allegation, not being denied by Bowar's answer, stood as admitted under sec. 263.26. In fact, Bowar's cross complaint expressly alleged in addition to the allegation relied upon by the trial court that on or about the middle of March, 1960, plaintiffs made a demand for damages upon him which was not controverted by I. D. O. This suit involving the several defendants was but one action, internally connected and based on the liability of Bowar, not three separate actions consolidated for trial as a matter of convenience. The trial proceeded on the theory of breach of warranty on all the pleadings which, in our view, admitted notice was given. These pleadings were before the court and in the case. They were not superseded pleadings which must be offered in evidence. *Folger v. Boyinton* (1886), 67 Wis. 447, 30 N. W. 715. We believe the trial court could take judicial notice of the allegations of notice of the breach of warranty in Bowar's cross complaint which stood admitted against those who now attempt to raise the insufficiency of the evidence. See *Chris Schroeder & Sons Co. v. Lincoln County* (1943), 244 Wis. 178, 182, 11 N. W. (2d) 665; *Dillard v. McKnight* (1949), 34 Cal. (2d) 209, 209 Pac. (2d) 387; *Kelley v. Kelley* (Fla. 1954),

75 So. (2d) 191; *Roberts v. Roberts* (1946), 201 Ga. 357, 39 S. E. (2d) 749; *James v. Unknown Trustees* (1950), 203 Okla. 312, 220 Pac. (2d) 831; *Swak v. Dept. of Labor & Industries* (1952), 40 Wash. (2d) 51, 240 Pac. (2d) 560; *In re Whitish* (1955), 47 Wash. (2d) 652, 289 Pac. (2d) 340.

The verdict is attacked by I. D. O. and McKesson & Robbins as not being supported by sufficient evidence of express warranty as against them. Bowar does not raise a like issue as against him. The testimony of Bowar, that he was familiar with the operation of plaintiffs' farm and told the plaintiffs the mix would increase the milk flow in sows which were farrowing and that the mix was fit for sow feed, certainly precludes him from arguing he made no express warranty. Any affirmation of fact or promise by the seller relating to the goods which has a natural tendency to induce a buyer to purchase and which is relied upon by the buyer constitutes an express warranty. Sec. 121.12, Stats.; 1 Williston, Sales (rev. ed.), p. 498, sec. 194. However, we have difficulty in finding sufficient evidence in the record to sustain an express warranty or any reliance by I. D. O. and McKesson & Robbins.

The testimony of Bowar is to the effect a representative of I. D. O. stated at a meeting that the mix was recommended but did not produce 100 percent results, and if any of the feed and supply stores were interested in the product, he would obtain some and make it available to them. There is also testimony this representative stated he would like to see the premix tried because he thought it might do some good, and Bowar was later furnished through the mail with some written material. Bowar, in his brief, does not challenge the arguments of I. D. O. or point out any evidence, and we find none, which would sustain the finding of express warranty. We must conclude an express warranty by I. D. O. is not supported by credible evidence.

Likewise, the finding of an express warranty by McKesson & Robbins is not sustained by the evidence. The trial court, in its decision, stated Mr. Dellios, an employee of McKesson & Robbins, recommended the product to Mr. Howard of I. D. O., and the latter relied upon the information supplied by Dellios or the advertising brochure mailed to I. D. O. by the manufacturer, Hoffman-Taff, which the jury had a right to find was furnished to I. D. O. by McKesson & Robbins. The testimony of Howard clearly indicates he was fully aware of the fact the manufacturer and not McKesson & Robbins had published the brochure and that he made an independent investigation of the premix and did not rely on any statement of Dellios. Howard further testified the only information Dellios gave him relative to the premix was another elevator company had used it. We do not find in the record sufficient evidence of reliance on the part of I. D. O. to establish a breach of an express warranty under sec. 121.12, Stats., 19 W. S. A., p. 37. The trial court found an express warranty on behalf of McKesson & Robbins on the ground it stood in the shoes of the manufacturer in not impleading it and on the ground McKesson & Robbins caused the brochure to be mailed to I. D. O. by the manufacturer. It is not necessary for us to decide this question in view of the nonreliance on the part of I. D. O., and we expressly do not decide whether a distributor is or is not liable for the express warranties of a manufacturer.

However, in question 5 of the verdict, the jury found the feed was not reasonably fit for the purpose for which it was intended, to wit: Feed for lactating sows. In instructing the jury, the court stated that a "No" answer to the question could be taken as a breach of an implied warranty. Sec. 121.15 (6), Stats., provides an express warranty or a condition does not negative an implied warranty unless inconsistent therewith. *Valley Refrigeration Co. v. Lange Co.*

(1943), 242 Wis. 466, 8 N. W. (2d) 294. The alleged express warranties are not inconsistent with an implied warranty of fitness. There is no inconsistency here. The complaint alleges the feed was adulterated and not fit for the feeding of sows which had farrowed and caused the said sows fed with it to dry up, causing the piglets to be hungry and stunted, and such unfitness was a breach of warranty which resulted in damage. We consider that there is an implied warranty of fitness under sec. 121.15. The jury found the feed mix was not reasonably fit for the purpose for which it was intended. In fact, the feed not only failed to increase the quantity and quality of the milk but did precisely the opposite. The special feed simply was not fit for a pig, and thus the plaintiffs had no little piggies to send to market. Such breach of implied warranty is sufficient to sustain the judgment against I. D. O. and also the judgment against McKesson & Robbins.

While we have not decided when a distributor is liable for an express warranty originating with the manufacturer, sec. 121.15, Stats., covering implied warranties, does apply to a sale by a distributor in the chain of distribution from the manufacturer to the consumer.

McKesson & Robbins objected to the form of judgment against it on the ground the judgment would permit recovery by I. D. O. without first paying Bowar. We do not so read the language of the judgment, which provides that I. D. O. will have a judgment over against the defendant McKesson & Robbins. We interpret the word "over" to mean that I. D. O. should not recover on the judgment without first paying the judgment the defendant Bowar has secured against it, and likewise Bowar should not recover on his judgment against I. D. O. without his paying the judgment of the plaintiffs.

*By the Court.*—Judgment affirmed.

The following opinion was filed June 5, 1962:

PER CURIAM (*on motion for rehearing*). McKesson & Robbins, Inc., maintains that its additive was sold to I. D. O. Feed & Supply Corporation under the trade name of "Sow Lactation Premix."

Sec. 121.15 (4), Stats., provides:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

Based on this statute, McKesson & Robbins, Inc., contends that I. D. O. is precluded from obtaining the benefit of an implied warranty because of the use of the trade name. This argument overlooks the important fact that sec. 121.15 (4), Stats., precludes an implied warranty only as to fitness for a particular purpose (sec. 121.15 (1)) but does not bar an implied warranty that goods are of a merchantable quality (sec. 121.15 (2)).

This distinction is recognized in 1 Williston, Sales (rev. ed.), p. 616, sec. 236a:

"Though the buyer by selecting goods sold under a patent or trade name cannot have an implied warranty that they are fit for his special purpose he may nevertheless rely on the seller for furnishing goods that are properly manufactured and are fit for the general purpose for which they are manufactured. In such a case the statement of the English court is sound: 'The implied condition [*i.e.* warranty] that the goods are of merchantable quality applies to all goods bought from a seller who deals in goods of that description, whether they are sold under a patent or trade name or otherwise.' The American authorities under the Sales Act support the statement."

See also *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N. J. 358, 161 Atl. (2d) 69.

Whether the name "Sow Lactation Premix" qualified as a "patent or other trade name" is a factual question which has not been resolved in the instant case; even if we were able to make the determination that the additive was sold under a patent or trade name, there would still be an implied warranty that the additive was safe for the general purpose of a feed supplement. The effect of the statutory prohibition is that no warranty for any special purpose would be implied.

The motion for rehearing is denied, with $25 costs.