SCHAEFER, Respondent, vs. WEBER, Appellant.

*October 8—November 3, 1953.*

162

For the appellant there was a brief and oral argument by *Harry U. Amidon* of Hartford.

For the respondent there was a brief by *George A. Hartman, Robert G. Hartman,* and *Leo C. Hartman,* all of Juneau, and oral argument by *Leo C. Hartman.*

CURRIE, J.   Counsel for the defendant contends that it was error for the trial court to have denied defendant's motion for a directed verdict. The basis of such contention is that the evidence establishes as a matter of law that plaintiff did not give a proper notice to defendant of the breach of warranty within a reasonable time as required by sec. 121.49, Stats., which provides in part as follows:

"But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

The complaint erroneously states that the cattle sold by defendant to plaintiff on October 14, 1949, were all heifers. Eleven of the twelve were heifers and the other animal was a small bull, but plaintiff's cause of action relates only to the heifers. The plaintiff testified that before the purchase the defendant represented that the cattle had been tested for Bang's disease and "were clear." Sec. 95.49(1), Stats. 1949, provided that it should be unlawful to sell any cattle unless "accompanied by a report of complete negative Bang's test conducted within thirty days."

The jury, in reaching their general verdict, had the right to find that a person in the position of plaintiff would have interpreted the defendant's representation to be that the cattle had undergone a Bang's disease test within thirty days prior to sale and had reacted negatively thereto.

Most of the heifers had been bred before sale, and one had aborted a few days prior thereto. The plaintiff discovered that something was wrong with such heifer and immediately called in a veterinarian who advised her that it had recently aborted. Plaintiff then notified the defendant who came and inspected said heifer. Most of the other heifers aborted in the fall of 1949, and the plaintiff informed the defendant of such

fact and he again came to plaintiff's farm and inspected several of the heifers.

The defendant did not furnish the Bang's disease test cards at the time of delivery of the cattle and the plaintiff sent her daughters and hired man to request them on several occasions, but the defendant always had some excuse why he could not deliver such test cards. Finally, after such repeated demands, and some four or five months after the delivery of the cattle, the defendant delivered to the plaintiff approximately 200 test cards and told plaintiff that she could pick out the ones covering the heifers purchased from him. By comparing the numbers on the eartags of the heifers purchased with those on the cards, plaintiff was able to find four or five cards covering tests of the heifers purchased, but all of these tests were made some ninety days before plaintiff had purchased the heifers from defendant. The plaintiff retained these four or five cards and returned the other cards to the defendant.

In August, 1950, plaintiff desired to have an auction sale of her cattle and called in an auctioneer who informed her that before doing so she would have to have them tested for Bang's disease. She then had such test made the latter part of August, and six of the heifers reacted positively, thus disclosing that they did have Bang's disease. These were sold on September 1, 1950, to the Cudahy Brothers Company, which was within one week after the tests had been made.

Plaintiff then consulted Attorney George A. Hartman of Juneau, who, on September 5, 1950, wrote the defendant a letter notifying him that plaintiff was claiming damages because of defendant having sold her heifers for dairy purposes without the same having been tested and which were infected with Bang's disease. While the testimony discloses that the plaintiff had notified defendant in the fall of 1949 on at least two occasions about the heifers aborting, and the defendant had then come to plaintiff's farm and inspected the heifers,

the record is entirely silent as to any notification by plaintiff to defendant that she intended to hold him liable in damages. This court has repeatedly held that a notice to seller of breach of warranty is defective unless it informs the seller that the buyer looks to him for damages. *Erickson v. Westfield Milling & Electric Light Co.* (1953), 263 Wis. 580, 58 N. W. (2d) 437; *Ace Engineering Co. v. West Bend Malting Co.* (1943), 244 Wis. 91, 11 N. W. (2d) 627; and *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392. Therefore, the verbal notices given by plaintiff to defendant in the fall of 1949 were defective in this respect. The first effective notice was the written one given by Attorney Hartman in behalf of plaintiff on September 5, 1950, which written notice was not given until more than ten months after the sale.

In so far as the representation that the cattle had been tested for Bang's disease within thirty days of the date of sale is concerned, the plaintiff knew, or ought to have known, of the falsity of such representation some five months before she had her attorney write the letter of September 5, 1950. This is so because she testified that some four or five months after the date of sale she did receive the large batch of test cards of which four or five did cover the heifers she had bought of defendant and all of which cards showed that the test had been made ninety days before sale.

While it is true, as contended by counsel for defendant, that only a Bang's disease test will disclose the presence of such disease in cattle, nevertheless, plaintiff must not have considered the abortions which took place in the fall of 1949 as due to natural causes. Otherwise she would not have made complaint to the defendant and had him come and look at the cattle.

In *Tegen v. Chapin* (1922), 176 Wis. 410, 187 N. W. 185, this court held that a delay of fifty-seven days in notifying the seller of a breach of warranty, after the abortion of a

cow (which abortion under the plaintiff's theory of the case established the breach of warranty), constituted an unreasonable time under the same section of the Uniform Sales Act now embodied in sec. 121.49, Stats. This case would appear to be the controlling authority on the question of plaintiff's right to recover against the defendant in the case at bar on a cause of action based upon breach of warranty under the Uniform Sales Act. While ordinarily the question of what constitutes a reasonable time to give such statutory notice presents a question of fact for determination by a jury, the delay may be for such a long period that as a matter of law the court must hold that the notice was not given within a reasonable time.

However, as we construe the plaintiff's cause of action as alleged in her complaint (the material portions of which have been set forth verbatim in the statement of facts preceding this opinion), the same sounds in tort and not in contract. In other words, the complaint alleges a cause of action for damages for fraud and deceit. As to such cause of action it is not necessary that plaintiff prove as a condition precedent to recovery that any prior notice was given to the defendant seller of intention to hold him liable for the falsity of the material representation made by him upon which plaintiff relied to plaintiff's prejudice.

Counsel for defendant in his oral argument to this court stated that it had been verbally agreed by counsel for both parties at the time of submission of the case to the jury that the plaintiff's cause of action was one for breach of warranty and not in tort for fraud and deceit. However, we have carefully examined the entire record in this case, and find that it is entirely silent as to any such stipulation or agreement on the part of plaintiff's counsel. The trial court did instruct the jury on the subject of breach of warranty and the giving of timely notice. This, however, did not prejudice the defendant because it placed an additional burden of proof upon

plaintiff. There is no claim made that the verdict was perverse or that there was not credible evidence to support a finding that the defendant had made the false representation which plaintiff alleged.

At the time of the purchase and sale a short memorandum written in lead pencil was subscribed to by both plaintiff and defendant which read as follows:

"Oct. 14, 1949

"12 head cattle sold for $2,000 Cash
"cattle sold as is.
"Paid in full."

Counsel for defendant contends that the words *"sold as is"* completely negatives any representation on the part of the defendant seller as to the testing of the cattle or their freedom from disease. We find it unnecessary to decide this point because plaintiff's counsel argued to the jury that, because the words *"cattle sold as is"* were either written in a less heavy hand that the preceding words or with a different lead pencil, the defendant had added such words to the memorandum after plaintiff had signed the same. Inasmuch as the jury returned a general verdict, it is possible that the jury may have accepted the contention of plaintiff's counsel as to such words having been added later after plaintiff had signed the same. Defendant made no request for a special verdict asking for a specific finding as to this point, and requested no instructions pertaining to this issue.

One further question presents itself on this appeal, and that is whether the plaintiff has the right to recover in view of the fact that the contract was illegal in that it provided for sale of cattle without the purchaser being supplied with test cards showing that the cattle had been tested for Bang's disease within thirty days of date of sale as required by sec. 95.49 (1), Stats. 1949. The Michigan court was confronted with this same issue in the case of *Groves v. Jones*

(1930), 252 Mich. 446, 233 N. W. 375. In that case the plaintiff buyer of cattle sought to rescind the sale and recover the purchase price from the defendant seller on the ground that the cattle had contagious abortion at the time of sale, and that the seller knew of such fact. A Michigan statute prohibited the sale of any domestic animal infected with any contagious disease. The Michigan court permitted recovery and held that the parties were not in *pari delicto*. While this Michigan case involved an action for rescission and not one for damages on the part of the buyer, the same principle would apply in both types of action. A further discussion of cases in which parties to an illegal sale or contract are held not to be in *pari delicto* is to be found in 3 Williston, Sales (rev. ed.), p. 647, sec. 680, and 5 Williston, Contracts (rev. ed.), p. 4568, sec. 1631. See also *Stevens v. Berger* (1949), 255 Wis. 55, 37 N. W. (2d) 841.

In the instant case the defendant falsely represented to the plaintiff that the heifers had been tested for Bang's disease within thirty days of date of sale and gave her an excuse why the test cards were not being delivered to her at the time of sale as required by statute, but promised to deliver such test cards in the near future. Plaintiff relied on such representation and the excuse given for not immediately furnishing her with the test cards, and therefore was not in *pari delicto* with the defendant and is entitled to recover her damages as found and determined by the jury in its general verdict.

*By the Court.*—Judgment affirmed.