Schroeder, Appellant, vs. Drees and another, Respondents.

*May 6—June 4, 1957.*

The cause was submitted for the appellant on the brief of *Charlton, Yanisch & Binzak*, attorneys, and *William A. Ritchay* and *Earl A. Charlton*, of counsel, all of Milwaukee, and for the respondents on the brief of *Norman B. Langill* of Marinette.

MARTIN, C. J. Respondents are operators of a livestock business in Peshtigo, Wisconsin; part of said business consists of operating a sales pavilion for the disposal of farmers' surplus livestock. On Fridays from May to October, inclusive, sales are conducted at the pavilion and livestock is sold for the owners or consignors in the auction ring. The stock sold is not the property of the respondents. A licensed veterinarian, appointed by the state, supervises the sale and passes on the credentials of all the stock offered for sale.

About a week prior to June 1, 1951, one C. E. Reynolds of Southwest City, Missouri, stopped at respondents' place of business and inquired whether hogs could be handled at the weekly sale. He was advised that they would have to be accompanied by a health certificate. On Thursday, May 31, 1951, one H. A. Harkrader delivered at the respondents' pavilion 152 young pigs from Reynolds, presenting the following document:

"AFFIDAVIT

"This is to certify that I, Dr. W. B. Lamb, a qualified veterinarian of Grove, Oklahoma, have this 29th day of May, 1951, inspected 152 shoats en route to Pestaco, Wisconsin.

"I find them clear of any infectious disease. I have given these hogs the treatment of hog cholera serum according to law. No virus used. None of these shoats are running temperature.

"The driver: H. A. Harkrader—en route to Pestaco, Wisconsin.

"Dr. W. B. Lamb

"State of Oklahoma } ss
"County of Delaware }

"Subscribed and sworn to before me this 29th day of May, 1951.

"Hazel H. Beaman
"Notary Public

"My commission expires 10–4–53."

Harkrader unloaded the pigs and they were placed in the receiving pens, and on the following morning when the state-appointed veterinarian arrived, respondents presented the affidavit to him.

Appellant is an experienced pig buyer, having dealt in 2,000 to 3,000 pigs prior to June 1, 1951. He arrived at the sales pavilion rather early on the morning of June 1st, inspected the pigs, and was satisfied with their condition. He testified that he asked Henry Drees whether the pigs were vaccinated and was informed that they were. Drees denies that he had any conversation with the appellant. Schroeder testified several times that he relied on his own judgment in buying the pigs.

The sale took place in the afternoon of June 1st and appellant purchased 128 of the pigs, paying $1,663.55 for them. Eight were sold to Maurice Hansen of Oneida, Wisconsin, and 16 to William E. Markey of Ironwood, Mich-

igan. These 152 pigs were the only pigs sold at the respondents' place of business during the year 1951.

After the purchase appellant removed eight of the pigs to a farm. The remaining 120 he left in the barn at the pavilion until the following Monday when he intended to take them to Rockford, Illinois, for sale to one Claude Erb. Over the week end appellant was the only person who cared for them. On Saturday or Sunday he noticed one of the pigs was dead.

On Monday he loaded the 119 animals into his truck, transported them to Rockford, delivered them to Erb, and was paid $1,963.50 for them. Erb asked Schroeder for a health certificate which is required by the state of Illinois for the transportation of animals into that state; Schroeder said he did not have it but would bring it with him on the next trip.

About ten days later, when Schroeder took another load of pigs to Erb, Erb refused them, and advised Schroeder that the pigs he had delivered on June 4th were all dead or dying. Subsequently all the pigs died. The disease was found by the state laboratory to be hog cholera and the state of Illinois, on behalf of Erb, proceeded against Schroeder for the collection of the money Erb had paid for the pigs together with certain costs, totaling $2,300.

Although Schroeder states in his amended complaint that he gave notice to respondents of breach of warranty and demanded return of his money following his discovery that the pigs were diseased, the evidence shows that respondents had no such notice until the commencement of this action on January 5, 1952, which was approximately seven months after Schroeder had been advised by Erb that the hogs were sick and dying.

The trial court found, and the undisputed evidence supports the finding, that appellant failed to give to respondents the notice required by sec. 121.49, Stats., which provides:

" . . . if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Giving of such notice is a condition precedent to liability; failure to do so is fatal to recovery by appellant on his first cause of action. *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392; *Ace Engineering Co. v. West Bend Malting Co.* (1943), 244 Wis. 91, 11 N. W. (2d) 627; *Erickson v. Westfield Milling & Electric Light Co.* (1953), 263 Wis. 580, 58 N. W. (2d) 437.

At the close of the testimony appellant moved to amend the complaint to conform to the proof, claiming absolute liability on the part of respondents because of their violation of sec. 95.19, Stats., prohibiting the transportation of diseased animals or animals which have been exposed to infectious disease, and violation of state and federal regulations with respect to the sale, receiving and transporting of swine intrastate and interstate.

The trial court properly denied the motion. Appellant served his first complaint, alleging breach of warranty, on January 5, 1952; he filed an amended complaint on July 8, 1955, again alleging breach of warranty as a first cause of action and adding fraud as a second cause of action. After the testimony was in at the trial, five years after the events complained of, it was too late to impose on the respondents the burden of meeting a new cause of action based on violation of sec. 95.19, Stats., and state and federal regulations.

Appellant maintains that it was error for the trial court to receive the affidavit, Exhibit F, in evidence because there was no showing that it referred to the hogs in question, that it was properly executed or that it was made by a qualified person. Under the circumstances the contention has no

merit. The 152 pigs referred to in the affidavit, en route to "Pestaco, Wisconsin" in charge of the driver H. A. Harkrader, were the 152 Reynolds pigs from which Schroeder's purchase was made on June 1st—no other inference can be drawn from the evidence.

No objection based on noncompliance with statute was material when the exhibit was offered in evidence. It was admissible as *prima facie* evidence of the statements contained therein. If appellant wished to attack its sufficiency or materiality, it was his burden to offer proof which would do so. The affidavit stands as evidence that the respondents' representations to the appellant that the pigs were healthy and had been vaccinated were not false.

While there is a conflict in the evidence as to whether or not such representations were in fact made, the conflict is immaterial since there is no proof that Drees knowingly and wilfully and with intent to induce the purchase by Schroeder, misrepresented the condition of the pigs. Drees testified that he relied on Dr. Burshinger, the state-appointed veterinarian in charge of the sale, to reject the pigs if he was not satisfied with the credentials which accompanied them. Fraud cannot be spelled out of Drees' reliance on Dr. Burshinger and on the affidavit or "health certificate."

Further, it was appellant's own testimony that the pigs were lively and appeared to be healthy. He testified he was experienced in these matters; that he inspected the pigs before purchasing them, was satisfied with their condition, and relied entirely upon his own judgment in buying them. He testified that they appeared to be healthy pigs on the date of the sale and on the following Monday when he loaded them and delivered them to Erb in Illinois.

Appellant relies on the testimony of Dr. B. A. Beach, a veterinarian who testified as an expert witness, whose opinion it was that the pigs purchased by Schroeder had hog cholera on the day of the sale. It was established, however,

that eight of the Reynolds pigs were sold to Maurice Hansen and 16 to William Markey and none of these 24 were infected with the disease. Dr. Beach testified that he could not reconcile that fact with his opinion that those acquired by the appellant were infected on June 1st. This testimony will not sustain a finding that respondents knowingly and wilfully misrepresented the condition of the pigs.

Fraud must be shown by clear, satisfactory, and convincing evidence; the rule is so well established as to require no citation of authority. In our opinion, it is highly significant that the Hansen and Markey pigs were healthy and remained healthy. Dr. Beach could not understand how they could have been free from disease while those which Schroeder purchased from the same drove died of cholera. In other words, Dr. Beach admitted that the health of the Hansen and Markey pigs was a fact inconsistent with his opinion that the Schroeder pigs were diseased when sold. In the absence of any explanation for this inconsistency, it would be speculation for a jury to find that the Schroeder pigs were infected at the time of the sale.

Exhibit F has not been impeached so far as it constitutes *prima facie* evidence of the statements contained therein; respondents' alleged representations were the same as those stated in the affidavit. There has been no showing they were false. The trial court properly directed the verdict for the respondents on the second cause of action.

*By the Court.*—Judgment affirmed.