Michael Wilson and Marcia Wilson,
Plaintiffs-Appellants,

v.

Robert Tuxen and American Family Mutual
Insurance Company, Defendants-Respondents,

Shelly Tuxen, Defendant.

Court of Appeals

*No. 2007AP1964. Submitted on briefs April 8, 2008.
—Decided May 20, 2008.*

2008 WI App 94

(Also reported in 754 N.W.2d 220.)

710

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Donald Chance Mark, Jr.*, and *Edward E. Beckmann* of *Fafinski Mark & Johnson, P.A.*, Eden Prairie, Minnesota.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Bruce J. Brovold* and *Justin H. Silcox* of *Kostner, Koslo & Brovold*, Arcadia.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. This action arises out of Michael and Marcia Wilson's purchase of a herd of dairy

cattle from Robert Tuxen.[1] The Wilsons allege the cattle were infected with Johne's disease, an infectious, ultimately fatal disease they claim caused the demise of their farm. The circuit court granted Tuxen summary judgment, dismissing the suit in its entirety.

¶ 2. Despite these relatively straightforward facts, this appeal involves seventeen different claims and a number of thorny legal issues. The issues include the scope of the "other property" exception to the economic loss doctrine, the meaning of WIS. STAT. §§ 95.19 and 95.195, two statutes regulating the sale of diseased animals, and how long a buyer may wait before giving notice of breach under the Uniform Commercial Code.[2] For the reasons given below, we reinstate nine of the seventeen claims: the six tort claims and three statutory claims based on WIS. STAT. § 95.19(2)(c)-(e). We therefore affirm in part, reverse in part, and remand for further proceedings.

### BACKGROUND

¶ 3. The Wilsons purchased fifty adult dairy cows from Tuxen in August 2001. According to the Wilsons, some of the cows began exhibiting health problems within several months of the sale. In June 2002, two of the cows tested positive for Johne's disease, and several more tested positive after that. The Wilsons' veterinarian testified Johne's disease is a fatal, contagious disease that is typically acquired during the first six

---

[1] The Wilsons originally named Robert Tuxen's wife Shelly Tuxen as a defendant. The parties later agreed to dismiss her from the case. For clarity, we refer to Tuxen and American Family collectively as Tuxen in this opinion.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

months of a cow's life. However, a cow may not exhibit clinical symptoms for many years after it contracts the disease. These clinical symptoms include serious weight loss, diarrhea, and dramatically reduced milk production. A cow that exhibits clinical symptoms is slaughtered.

¶ 4. The Wilsons filed suit in September 2004. Their original complaint included twelve claims. Six were tort claims, including misrepresentation and negligence.[3] Five were contract claims, including breach of express and implied warranties and promissory estoppel. The final claim alleged Tuxen had breached an implied warranty created by WIS. STAT. § 95.195.

¶ 5. Tuxen moved for partial summary judgment in April 2007. He argued all the contract claims and the WIS. STAT. § 95.195 implied warranty claim were barred because the Wilsons had not given notice of breach within a reasonable time as required under WIS. STAT. § 402.607. Tuxen submitted an affidavit stating he first received notice of a problem with the cows in April 2003, approximately ten months after the first cows tested positive for Johne's. The court granted Tuxen's motion and dismissed the contract claims and claim for breach of the WIS. STAT. § 95.195 implied warranty.

¶ 6. On the same day Tuxen's motion was decided, the Wilsons moved to amend their complaint to add five statutory claims corresponding to WIS. STAT. § 95.19(2)(a) through (e):

(2) PROHIBITIONS. No person may do any of the following:

---

[3] The Wilsons' unjust enrichment claim was treated as a tort claim by the parties and the court during the circuit court proceedings, and neither party challenges that classification in this appeal. For purposes of this appeal, we assume without deciding that this is correct.

(a) Import, sell, transport or exhibit an animal that is exposed to a contagious or infectious disease [without a permit].

(b) Import, sell, transport or exhibit an animal that is infected with a contagious or infectious disease, [without a permit].

(c) Knowingly conceal that an animal that is imported, sold, transported or exhibited has been exposed to or infected with a contagious or infectious disease.

(d) Knowingly misrepresent that an animal has not been exposed to or infected with a contagious or infectious disease.

(e) Knowingly permit an animal that has been exposed to or infected with a contagious or infectious disease to commingle with other animals under conditions that may cause the disease to spread to an animal owned by another person.

. . . .

(4) DAMAGES. A person who violates this section is liable to any person injured for damages sustained as a result of the violation.

The court allowed the Wilsons to add claims based on paragraphs (a) and (b). The court did not allow the Wilsons to add claims based on paragraphs (c) through (e), stating that "on the basis of what's been filed today there's no evidence [Tuxen] knowingly concealed and knowingly misrepresented" the cows' diseased status.

¶ 7. Tuxen moved for summary judgment on the Wilsons' tort claims and the two new claims alleged in the amended complaint, arguing they were all barred by the economic loss doctrine. The court granted summary judgment. The court concluded the economic loss doctrine barred the Wilsons' tort claims. The court dis-

missed the WIS. STAT. § 95.19 claims as well, holding § 95.19 was a safety statute that did not create a claim apart from the underlying tort.

DISCUSSION

¶ 8. Whether summary judgment is appropriate is a question of law reviewed without deference to the circuit court, using the same methodology. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); *Green Spring Farms*, 136 Wis. 2d at 315. We view the facts in the light most favorable to the party opposing the motion. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916 (Ct. App. 1986).

## I. Common law tort claims

¶ 9. The first issue in this appeal is whether the Wilsons' tort claims are barred by the economic loss doctrine. Specifically, the parties disagree on whether the "other property" exception to the economic loss doctrine applies.[4] Whether the economic loss doctrine applies to a given set of facts is a question of law reviewed without deference. *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 5, 283 Wis. 2d 606, 699 N.W.2d 189.

¶ 10. As a general rule, the economic loss doctrine precludes tort remedies when a purchaser suffers only

---

[4] The Wilsons do not argue any of the other exceptions to the economic loss doctrine apply.

717

economic losses resulting from a defective product. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). Economic losses include loss of value of the product and consequential economic losses to the purchaser caused by the defect, such as lost profits. *Id.* at 246. Economic losses do not include "damage to property other than the product itself." *Id.* at 247.

¶ 11. "Other property" is a legal term of art, not a literal description. *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 27, 283 Wis. 2d 511, 699 N.W.2d 167. When a defective product is part of an "integrated system," the other components of the system are not considered "other property." *Wausau Tile*, 226 Wis. 2d at 249. For example, in *Wausau Tile* the defective product was concrete that was combined with other ingredients to form paving blocks. *Id.* at 251. Because the concrete was an "indistinguishable, integral part" of the paving blocks and could not be identified separately from them, the paving blocks were not "other property." *Id.*

¶ 12. In addition, "other property" does not include property damaged as a result of the purchaser's disappointed performance expectations about the product. *Grams*, 283 Wis. 2d 511, ¶ 3. For example, *Grams* involved a milk replacer that was intended to provide sustenance for calves during the first few weeks after they were born. *Id.*, ¶ 6. The replacer allegedly caused malnutrition and increased calf mortality. *Id.*, ¶ 8. The supreme court stated that it "is difficult to think of a better example of disappointed expectations than a product that is expected to nourish animals but leaves them malnourished." *Id.*, ¶ 51.

¶ 13. In this case, the Wilsons argue the cows they purchased from Tuxen are "other property" because they are not part of an integrated system and the Johne's disease is not a result of disappointed performance expectations. They also argue "other property" was damaged because Tuxen's cows infected a calf the Wilsons purchased after they acquired Tuxen's herd.

██

¶ 14. The cows purchased from Tuxen are the defective product in this case. They are not "property other than the product itself." *See Wausau Tile*, 226 Wis. 2d at 247. *Wausau Tile* and *Grams*, among other cases, narrow the legal definition of "other property" to exclude some property that, literally speaking, is "property other than the product itself." *Grams*, 283 Wis. 2d 511, ¶ 27. However, nothing in those cases suggested the reverse is true—that "other property" could include the defective product itself. Indeed, "physical damage to the product itself" is the classic example of an economic loss. *Id.*, ¶ 23; *see also Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 401, 573 N.W.2d 842 (1998). The Wilsons' loss here is therefore a direct economic loss—the "loss in value of the product" the Wilsons purchased—not damage to other property. *See Wausau Tile*, 226 Wis. 2d at 246 (citation omitted).

██

¶ 15. Even if the cows purchased from Tuxen could be "property other than the product itself," their loss in value due to Johne's is a disappointed performance expectation. *See Wausau Tile*, 226 Wis. 2d at 247. In this case, the Wilsons purchased cows intending to use them in their dairy operation. Because the herd was infected with Johne's disease, the cows produced less milk, and some of them died. The cows' failure to

produce as expected was contrary to the Wilsons' expectation of the cows' performance. *See Grams*, 283 Wis. 2d 511, ¶ 51.

¶ 16. The Wilsons argue the correct question is whether they "should have 'reasonably foreseen' that the cows had Johne's and the consequences for [their] farm." They rely on *Foremost Farms USA Cooperative v. Performance Process, Inc.*, 2006 WI App 246, ¶ 23, 297 Wis. 2d 724, 726 N.W.2d 289, where we stated that close cases "will require a factual inquiry into what a reasonable purchaser in the plaintiff's position would have foreseen." The Wilsons argue there is a factual dispute over whether they should have foreseen the risk that the cows had Johne's.

¶ 17. This argument is similar to an argument rejected in *Grams*. In that case, the plaintiffs contended their losses as a result of the milk replacer went beyond disappointed performance expectations when it killed some of the calves it was intended to nourish. *Grams*, 283 Wis. 2d 511, ¶ 52. The court rejected this argument, noting that "the calves' nutrition—or, unfortunately, malnutrition—was at the heart of the bargain the Grams made." *Id.*, ¶ 53. In this case, the cows' ability to produce milk was at the heart of the bargain the Wilsons made. The correct question here is whether the Wilsons should have anticipated the risk that the cows would fail to produce, not the risk that the cows might be infected with a particular ailment.

¶ 18. In addition, even assuming such a specific question is the correct one, Michael Wilson testified in his deposition that he asked Tuxen whether Tuxen had ever had problems with Johne's in his herd. Wilson's question shows he knew there was some risk that Johne's might be present in a herd. The Wilsons do not

720

point to any evidence suggesting a reasonable person would not have perceived the risk. This is not the kind of case discussed in *Foremost Farms*, where a fact finding is necessary to determine what a reasonable person would envision; instead, it is a case in which the evidence in the summary judgment record points in only one direction. *See Foremost Farms*, 297 Wis. 2d 724, ¶ 23.[5]

¶ 19. This leaves only the diseased calf as potential "other property." Unlike the cows Tuxen sold the Wilsons, the calf was purchased elsewhere and therefore is literally "property other than the product itself." *See Wausau Tile*, 226 Wis. 2d at 247. Tuxen concedes this calf is "other property" for purposes of the economic loss doctrine. He argues, however, that the Wilsons did not produce evidence sufficient to create a factual dispute as to whether the calf was actually infected by Tuxen's herd.

¶ 20. Specifically, Tuxen argues the Wilsons were required to produce expert testimony indicating the calf was infected by Tuxen's herd. Expert testimony is mandatory only when an issue is "not within the realm of ordinary experience and lay comprehension." *Robinson v. City of* West Allis, 2000 WI 126, ¶ 29, 239 Wis. 2d 595, 619 N.W.2d 692 (citation omitted). Put another way, requiring expert testimony is an "extraordinary step" to be taken only when a jury is confronted with "unusually complex or esoteric issues." *Id.* (citation omitted).

---

[5] The Wilsons also argue WIS. STAT. §§ 95.19 and 95.195 prohibit the parties from allocating the risk of Johne's between them, making the economic loss doctrine inapplicable. However, this argument is based primarily on the Wilsons' contention—rejected below—that § 95.19(2)(a)-(b) create strict liability in sales of cows with Johne's disease.

¶ 21. In their summary judgment submissions, the Wilsons produced circumstantial evidence that Tuxen's cows were infected with Johne's at the time of the sale. They also produced expert testimony that Johne's is transmitted through exposure to the fecal matter or colostrum[6] of an infected cow, typically during a calf's first six months of life. Michael Wilson testified he traded another animal for the calf at some point after he purchased the Tuxen herd. Wilson testified the calf was under a year old when he acquired it, was "exposed at prolonged periods" to the Tuxen cows, and later tested positive for Johne's disease.

¶ 22. In this case, the only issue "not within the realm of ordinary experience" is the way the disease could be transmitted. *See id.* The Wilsons produced expert testimony on this point. The other evidence is circumstantial: the Wilsons bought the calf, it was exposed to the Tuxen cows, the Tuxen cows had Johne's, and the calf later tested positive for Johne's. A jury could reasonably infer the calf acquired Johne's from the Tuxen cows based on this evidence. It does not need an expert to make that link. The Wilsons have met their summary judgment burden on this issue.

¶ 23. The economic loss doctrine does not bar claims that result in economic losses in combination with non-economic losses, such as damage to other property. *Daanen & Janssen*, 216 Wis. 2d at 402. If the

---

[6] Colostrum is "a specialized secretion of the mammary glands that is produced during the first few days after parturition, that . . . supplies essential immune bodies to the young animal and aids in the establishment of the intestinal function." WEBSTER'S THIRD NEW INT'L DICTIONARY 450 (unabr. 1993).

calf was in fact infected by the Tuxen cows, the Wilsons have suffered a loss to other property, and the economic loss doctrine does not bar their tort claims. *See Wausau Tile*, 226 Wis. 2d at 247. Whether the calf was infected is therefore a disputed material fact preventing summary judgment on the Wilsons' tort claims. We reverse the summary judgment dismissing those claims.

## II. Claims under Wis. Stat. § 95.19

¶ 24. The parties next disagree on whether the court erred in dismissing the statutory claims. We resolve this issue in three steps. First, we conclude Wis. Stat. § 95.19 claims are not subject to the economic loss doctrine. Second, we conclude three of the five claims can be based on Johne's disease. Finally, we conclude the court erred in not allowing the Wilsons to amend their complaint to include the three claims. We reinstate three of the five dismissed claims.

### A. The economic loss doctrine

¶ 25. As noted above, Wis. Stat. § 95.19(2) prohibits five different acts related to diseased livestock. Under § 95.19(4), "A person who violates [§ 95.19] is liable to any person injured for damages sustained as a result of the violation."

¶ 26. First, Tuxen does not respond to the Wilsons' argument that Wis. Stat. § 95.19 sets out distinct claims with their own elements, not simply an additional remedy for tort claims. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 42, 252 Wis. 2d 676, 643 N.W.2d 132; *see also State v. Alexander*, 2005 WI App 231, ¶ 15, 287 Wis. 2d 645, 706 N.W.2d 191 ("Arguments not refuted are deemed admitted."). Tuxen also does not respond to the Wilsons' position that as a general rule statutory

claims are not subject to the economic loss doctrine. *See Kailin*, 252 Wis. 2d 676, ¶ 42; *see also Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 33, 308 Wis. 2d 103, 746 N.W.2d 762.

¶ 27. Instead, Tuxen argues the language of Wis. Stat. § 95.19 shows the legislature intended the economic loss doctrine to apply to § 95.19 claims. He argues the phrase "any person injured" shows the legislature intended to allow recovery under § 95.19 only when a violation of that section causes personal injuries, as opposed to economic losses. Tuxen relies on *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 307 (Pa. Super. 2003), in which a Pennsylvania appeals court held the term "injury" as used in a statutory claim was "analogous to the 'physical injury or property damage' requirements" in the economic loss doctrine.

■■■■■

¶ 28. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a way that avoids absurd results. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We also consider the purpose of the statute so far as its purpose is shown in the text and structure of the statute itself. *Id.*, ¶ 48.

¶ 29. Black's Law Dictionary defines "injury" as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." Black's Law Dictionary 801 (8th ed. 2004). While "person injured" could conceivably be read in a vacuum to require a physical injury to a person, a more plausible meaning is that "person injured" simply means a person making a Wis. Stat. § 95.19 claim—in other words, a person

who suffers a loss "for which the law provides a remedy" under § 95.19. *See* Wis. Stat. § 95.19(4); Black's, *supra,* at 801.

¶ 30. Any doubt is resolved by the remainder of the statute. All of the prohibited practices listed in Wis. Stat. § 95.19(2) involve the import, sale, transport, or exhibition of diseased livestock. As the Wilsons point out, expert testimony in this case indicates Johne's disease does not pose any danger to humans. Tuxen does not identify any other diseases subject to § 95.19(2) that pose a danger to humans. The only fair reading of § 95.19 is that it is intended to provide a remedy for farmers who sustain losses as a result of misrepresentations or poor practices related to diseased livestock. Providing a remedy only when the diseased livestock injure humans would severely limit the claims that could be brought under § 95.19, and would be wholly inconsistent with the legislative purpose evident from the text of § 95.19(2).

## B. Liability for Johne's disease

¶ 31. The parties next dispute whether Johne's disease can be a basis for liability under Wis. Stat. § 95.19. Under § 95.19, the Department of Agriculture, Trade and Consumer Protection is authorized to promulgate rules "[s]pecifying those contagious or infectious diseases to which the prohibitions of [§ 95.19(2)] . . . apply." Wis. Stat. § 95.19(3)(b). The department has responded with Wis. Admin. Code § ATCP 10.08 (May 2008):[7]

---

[7] The transaction here took place in 2001. None of the changes in Wis. Admin. Code § ATCP 10.08 (May 2008), since

(1) GENERAL. No person may, in connection with the import, sale, movement or exhibition of any animal, do any of the following:

(a) Knowingly conceal that the animal has been infected with or exposed to any contagious or infectious disease.

(b) Knowingly misrepresent that the animal has not been exposed to or infected with any contagious or infectious disease.

(c) Knowingly permit an animal that has been exposed to or infected with a contagious or infectious disease to commingle with other animals under conditions that may cause the disease to spread to an animal owned by another person.

(2) CONTAGIOUS OR INFECTIOUS DISEASES: Except as provided in sub. (3), no person may sell or move any animal that is infected with or exposed to any of the following contagious or infectious diseases, or any animal that the department has classified as a suspect or reactor for any of the following contagious or infectious diseases:

Subsection (2) then contains a list of nineteen specific diseases. Johne's disease is not one of the nineteen listed diseases.

¶ 32. We conclude the department has set out different rules for the five claims in WIS. STAT. § 95.19(2). The two claims found in paragraphs (2)(a) and (b) are strict liability. They provide that no person may "[i]mport, transport, sell, transport, or exhibit" diseased animals or animals exposed to disease. These two sections correspond to WIS. ADMIN. CODE § ATCP

2001 are material. *See* Clearinghouse Rule 03–121 § 14. For clarity, we refer to the current version of the code in our analysis.

10.08(2), which also is a strict liability section. Subsection (2) states that no one may "sell or move"[8] animals infected with a list of nineteen specific diseases. Because Johne's disease is not on that list, it cannot be a basis for liability under § 95.19(2)(a)-(b).

¶ 33. The three claims found in WIS. STAT. § 95.19(2)(c)-(e) prohibit three different kinds of knowing conduct. For example, paragraph (2)(c) provides that no person may "Knowingly conceal that an animal . . . has been exposed to or infected with a contagious or infectious disease." Paragraphs (2)(c)-(e) correspond to WIS. ADMIN. CODE § ATCP 10.08(1)(a)-(c). All three of those paragraphs provide liability when the animal has "*a* contagious or infectious disease" or "*any* contagious or infectious disease."[9] WIS. ADMIN. CODE § ATCP 10.08(1) (emphasis added). Johne's disease is defined elsewhere in the administrative code as an infectious disease. WIS. ADMIN. CODE § ATCP 10.01(58). Because liability under § 95.19(2)(c)-(e) may be based on any disease that is either contagious or infectious, Johne's disease can create liability under those paragraphs.

¶ 34. The Wilsons argue all WIS. STAT. § 95.19 claims can be based on Johne's disease because it is an infectious disease. *See* WIS. ADMIN. CODE § ATCP 10.01(58). However, § 95.19 specifically gives the de-

---

[8] We see no difference between the phrase "sell or move" used in WIS. ADMIN. CODE § ATCP 10.08(2) and the phrase "[i]mport, sell, transport, or exhibit," used to describe prohibited conduct in WIS. STAT. § 95.19(2)(a)-(b).

[9] We see no difference between the phrases "a contagious or infectious disease" and "any contagious or infectious disease" in this context. Both include every disease that is either contagious or infectious.

partment the authority to specify "those contagious or infectious diseases"—in other words, *which* contagious or infectious diseases—can create liability under § 95.19(2)(a)-(e). Wɪs. Sᴛᴀᴛ. § 95.19(3). The department had the authority to exclude some infectious diseases from that list, which is exactly what it did in § ATCP 10.08(2).

¶ 35. The two separate lists of diseases are consistent with the purpose evident from the text of Wɪs. Sᴛᴀᴛ. § 95.19 and Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § ATCP 10.08: protecting farmers and others from losses related to diseased livestock. The nineteen listed diseases in § ATCP 10.08 include serious diseases such as chronic wasting disease, rabies, and foot and mouth disease. The department's decision to impose strict liability on anyone who moves or sells animals with these serious diseases reflects a need to keep these diseases contained at all costs. However, this same need is not present in less serious contagious or infectious diseases. The rule therefore sets out a sliding scale, attaching strict liability to the most dangerous diseases, but prohibiting certain knowing acts for all contagious or infectious diseases.

### C. The Wilsons' motion to amend

¶ 36. The remaining issue is whether the court erred in not allowing the Wilsons to amend their complaint to include claims based on Wɪs. Sᴛᴀᴛ. § 95.19(2)(c)-(e). Under Wɪs. Sᴛᴀᴛ. § 802.09, if more than six months have passed since the original complaint was filed, a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires." Wɪs. Sᴛᴀᴛ. § 802.09(1).

Whether to allow amendment is a discretionary decision that will be upheld unless the court "failed to exercise its discretion, the facts do not support the court's decision, or the court applied the wrong legal standard." *Hess v. Fernandez*, 2005 WI 19, ¶ 12, 278 Wis. 2d 283, 692 N.W.2d 655.

¶ 37. Here, the court denied the motion in part and granted it in part. The court allowed two other claims based on WIS. STAT. § 95.19(2)(a) and (b), but stated that "on the basis of what's been filed today there's no evidence [Tuxen] knowingly concealed and knowingly misrepresented" the cows' diseased status. The court therefore did not allow the Wilsons to include claims based on § 95.19(2)(c)-(e), which include a knowledge element.

¶ 38. We conclude this was an erroneous exercise of discretion, for two reasons. First, the court was called on to decide whether to allow an amended pleading, not whether evidence supported the amendment. The court allowed the Wilsons to add other statutory claims, implicitly finding that justice required allowing the Wilsons to add statutory claims at the time they made their motion. The court appears to have applied a summary judgment standard rather than the standard found in WIS. STAT. § 802.09. The court therefore erroneously exercised its discretion by applying the wrong standard of law. *See Hess*, 278 Wis. 2d 283, ¶ 12.

¶ 39. In addition, contrary to the court's statement, the Wilsons have met their summary judgment burden on the WIS. STAT. § 95.19(2)(c)-(e) claims. Tuxen has conceded that whether the cows were infected with Johne's at the time of sale remains a disputed issue of material fact. The Wilsons' expert testified that because

of the symptoms of Johne's it is unlikely that Tuxen could have had Johne's in his herd without knowing it. Michael Wilson testified Tuxen told him he had "never had a problem with Johne's." This evidence creates factual disputes as to whether Tuxen knew about the Johne's disease, whether he knowingly concealed or misrepresented the cows' diseased status, and whether he knowingly allowed them to be part of a herd where they might infect other cows owned by the Wilsons.

## III. Contract claims

¶ 40. The parties next disagree on whether the Wilsons gave timely notice of breach under WIS. STAT. § 402.607. That section provides that when a buyer accepts goods, the buyer "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." WIS. STAT. § 402.607(3)(a). Ordinarily, what constitutes a "reasonable time" is a question of fact for a jury. *Schaefer v. Weber*, 265 Wis. 160, 167, 60 N.W.2d 696 (1953).[10] However, a delay "may be for such a long

---

[10] *Schaefer* interpreted the Uniform Sales Act, the predecessor to Article 2 of the Uniform Commercial Code. *Schaefer v. Weber*, 265 Wis. 160, 167, 60 N.W.2d 696 (1953). The Uniform Sales Act provided that:

> [I]f, after acceptance of the goods, the buyer fails to give notice to the seller of the breach . . . within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor.

WIS. STAT. § 121.49 (1953). Neither party argues a "reasonable time" under Article 2 is different from a "reasonable time" under the Uniform Sales Act. The policies underlying the two sections are the same. *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972 (5th Cir. 1976).

period that as a matter of law the court must hold that the notice was not given within a reasonable time." *Id*.

¶ 41. A notice of breach serves two purposes. First, if the seller is not aware that the goods are defective, the notice can serve to inform the seller of the defect and give the seller an opportunity to remedy it. *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 971 (5th Cir. 1976). In addition—and perhaps more importantly—the notice serves to advise the seller that "the buyer considers him [or her] . . . responsible to remedy a troublesome situation." *Paulson v. Olson Implement Co.*, 107 Wis. 2d 510, 525 n.8, 319 N.W.2d 855 (1982). This is intended to "open the way for settlement through negotiation between the parties" and permit the seller to "investigate the claim while the facts are fresh, avoid the defect in the future, minimize his damages, or perhaps assert a timely claim of his own against third parties." *Eastern Air Lines*, 532 F.2d at 972; *see also Paulson*, 107 Wis. 2d at 525–26.

¶ 42. Wisconsin courts interpreting WIS. STAT. § 402.607 have not stated how long a delay must be in order to be not within a reasonable time as a matter of law. However, three cases interpreting the Uniform Sales Act are instructive here. First, in *Schroeder*, the buyer waited seven months to give the seller notice after he learned pigs he had purchased were infected with hog cholera. *Schroeder v. Drees*, 1 Wis. 2d 106, 109, 83 N.W.2d 707 (1957). The court concluded notice was not given within a reasonable time as a matter of law. *Id*. Second, in *Schaefer* the buyer did not give notice for five months after learning she had purchased diseased cattle. *Schaefer*, 265 Wis. at 166. While the court decided the case on other grounds, it suggested five months would not have been a reasonable time to delay

giving notice. *Id.* at 167. Finally, *Tegen* involved a fifty-seven day delay in giving notice of a breach of a warranty that a cow was a breeder. *Tegen v. Chapin*, 176 Wis. 410, 415, 187 N.W. 185 (1922). The court held that absent "circumstances excusing or justifying [the] delay," fifty-seven days was not a reasonable time to delay giving notice as a matter of law. *Id.* at 416.

¶ 43. In this case, the Wilsons learned cows in the Tuxen herd had tested positive for Johne's in June 2002. They did not give Tuxen notice of breach until April 2003. The Wilsons do not give any explanation for the delay. This is a significantly longer period of time than in any of the cases discussed above. Absent evidence of "circumstances excusing or justifying [the] delay," ten months is not a reasonable time to delay giving notice as a matter of law. *See id.*; *see also Schroeder*, 1 Wis. 2d at 109.

¶ 44. The Wilsons argue that because Johne's is an incurable disease, a timely notice would not have changed the outcome. However, the purpose of a notice goes beyond simply triggering any right to cure under WIS. STAT. § 402.508. As discussed above, the notice is intended to "open the way for settlement through negotiation between the parties" and give the seller an opportunity to protect him or herself. *Eastern Air Lines*, 532 F.2d at 972. As Tuxen points out in his brief, the Wilsons allege the diseased herd caused them serious collateral consequences, including the loss of their farm. As a result, their claimed damages are almost ten times the purchase price of the herd.[11]

---

[11] The Wilsons' expert's report claims total damages of $726,669. The purchase price of the herd was $75,000.

Timely notice would have given Tuxen the opportunity to replace the diseased animals or take other steps intended to limit those collateral consequences. Whether Tuxen would have availed himself of that opportunity—or whether a solution would actually have been reached—is beside the point. WISCONSIN STAT. § 402.607 required a notice of breach when a business solution to this problem was most likely to still be available.

¶ 45. The Wilsons also rely on the revised Uniform Commercial Code.[12] The revised UCC § 2–607(3)(a) states that if a buyer accepts goods,

> (a) the buyer must within a reasonable time after *the buyer* discovers or should have discovered any breach notify the seller, *but failure to give timely notice bars the buyer from a remedy only to the extent that the seller is prejudiced by the failure* . . . .

1 Uniform Laws Annotated 499 (West 2004) (emphasis added). The emphasized portion is the American Law Institute's recommended revision to UCC § 2–607(3)(a). However, Wisconsin has not enacted the revised UCC Article 2. The law of this state remains that a buyer must give notice "or be barred from any remedy." WIS. STAT. § 402.607(3)(a). Current § 402.607(3)(a) does not contain an exception to the notice requirement when the seller is not prejudiced.

---

[12] The Wilsons indicate they are relying on a comment to the revised model Article 2, apparently comment 4. *See* 1 Uniform Laws Annotated 500 (West 2004). However, comment 4 explains revised UCC § 2–607(3)(a), not the original version applicable here.

### IV. Breach of Wis. Stat. § 95.195 implied warranty

¶ 46. Finally, the parties dispute whether the Wilsons were required to give notice of breach under Wis. Stat. § 402.607 in order to sustain their claim for breach of Wis. Stat. § 95.195 implied warranty. This requires us to interpret § 95.195 and relevant portions of Article 2 of the Uniform Commercial Code.

¶ 47. Wisconsin Stat. § 95.195(2) provides:

> [I]n every contract for the sale of an animal of a type specified by the department . . . there is an implied warranty that the animal is not infected with a covered disease[13] unless the seller discloses to the buyer in writing, prior to sale, all of the following:
>
> (a) The management classification of the animal's herd with respect to the covered disease.
>
> (b) If the animal is a reactor with respect to the covered disease, that the animal is a reactor.

¶ 48. The Wilsons argue this section is intended to operate as a stand-alone provision. Tuxen argues it supplements Wis. Stat. §§ 402.314 and 402.315, the Article 2 sections governing implied warranties for transactions in goods. Tuxen argues other Article 2 provisions, including the notice provision in Wis. Stat. § 402.607, are therefore applicable.

¶ 49. We agree with Tuxen. The legislature is presumed to act with knowledge of existing statutes. *Park Manor, Ltd. v. DHFS*, 2007 WI App 176, ¶ 33, 304

---

[13] The department has specified that cows are a type of animal subject to Wis. Stat. § 95.195, and Johne's disease is a "covered disease" under § 95.195. Wis. Admin. Code § ATCP 10.16(1).

Wis. 2d 512, 737 N.W.2d 88. When the legislature enacted Wis. Stat. § 95.195, then, it was aware that livestock were goods and a sale of livestock was an Article 2 transaction. Wis. Stat. §§ 402.102, 402.105(1)(c) (1989–90).[14] It also was aware that Article 2 provided other implied warranties, a method for modifying or excluding those warranties, and rules governing breach and remedy. *See, e.g.,* Wis. Stat. §§ 402.314, 402.315, 402.316, 402.601, 402.703 (1989–90).

¶ 50. Wisconsin Stat. § 95.195 makes little sense except as a supplement to those Article 2 provisions. Section 95.195 merely states that a certain implied warranty exists. To determine what a buyer's and seller's rights and obligations are with respect to that warranty —and as a result, what will constitute a breach—one must consult Wis. Stat. §§ 402.601–402.616. To determine the proper remedy for a breach of the warranty, one must consult Wis. Stat. §§ 402.701–402.725. We see no way to read § 95.195 except as a provision intended to operate in conjunction with existing Article 2 rules governing implied warranties.

¶ 51. The Wilsons argue Article 2 provisions do not apply because it is "common sense" that a "seller cannot provide a cure for the diseased cows." However, a cure for purposes of Article 2 is not a veterinary cure. It is a delivery of goods that conform to the contract. Wis. Stat. § 402.508. Here, a cure would have been a delivery of healthy cows to replace the diseased ones. In addition, even if no cure was possible here, that only means the seller would be unable to cure, and other provisions of Article 2 would govern parties' rights and obligations. It does not mean all provisions of Article 2 are inapplicable.

[14] Wisconsin Stat. § 95.195 was enacted in 1989. 1989 Wis. Act 277 § 6.

¶ 52. We are satisfied the legislature intended WIS. STAT. § 95.195 as an implied warranty in addition to the implied warranties found in WIS. STAT. §§ 402.314 and 402.315, not as a stand-alone provision. As a result, the provisions of Article 2, including the notice of breach requirement in WIS. STAT. § 402.607(3)(a), apply to the Wilsons' claim for breach of the § 95.195 warranty. Because the Wilsons did not give notice of breach within a reasonable time, their § 95.195 claim is barred along with their other contract claims. *See* WIS. STAT. § 402.607(3)(a).

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded for further proceedings. No costs.